1
2
3
4                    UNITED STATES DISTRICT COURT

5                  NORTHERN DISTRICT OF CALIFORNIA

6

7    MICHAEL DEVIN FLOYD,                    Case No. 24-cv-01278-TSH

8                    Plaintiff,

9           v.                              ORDER RE: MOTION TO DISMISS,
                                            MOTION TO REMAND, AND IN
10   SABER FITNESS HEGENBERGER, LLC,        FORMA PAUPERIS APPLICATION

11                   Defendant.             Re: Dkt. Nos. 13, 15, 19

12

13                         **I.    INTRODUCTION**

14          Pending before the Court are Defendant Saber Fitness Hegenberger, LLC's Motion to

15   Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 13), Plaintiff Micheal

16   Devin Floyd's Motion to Remand (ECF No. 15), and Floyd's Application to Proceed In Forma

17   Pauperis (ECF No. 19).  The Court finds these matters suitable for disposition without oral

18   argument and **VACATES** the June 13, 2024 hearing.  *See* Civ. L.R. 7-1(b).  For the reasons stated

19   below, the Court **DENIES** Floyd's in forma pauperis application, **DENIES** Floyd's motion to

20   remand, and **GRANTS** Saber's motion to dismiss.[1]

21                         **II.    BACKGROUND**

22          Floyd, who is African American, opened an all-access gym membership at Planet Fitness,

23   which is owned by Saber, in Jacksonville, Florida in 2019.  First Am. Compl. at 3, 10 & Ex. B to

24   Notice of Removal at 3, ECF No. 1-2; Mot. to Dismiss at 1.  While visiting family in San Jose in

25   July 2021, he went to a Planet Fitness location there and was subsequently told by his home gym

26   in Florida that there was a complaint about his "vulgarity and personality."  First Am. Compl. at 3-

27   _____

28   [1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF Nos.
     16, 29, 36.

United States District Court
Northern District of California

1    4.  Staff at the San Jose Planet Fitness said Floyd was no longer allowed there, but they did not

2    provide any further details.  *Id.* at 4.  Floyd began using other Planet Fitness gyms in the nearby

3    area, but "other incidents occurred" at these gyms, and his home gym in Florida subsequently

4    informed him that his membership was cancelled.  *Id.*

5          On September 17, 2021, Floyd opened another Planet Fitness membership in Oakland,

6    California.  *Id.* at 5 & Ex. 5 (Membership Agreement).  Floyd alleges several incidents took place

7    at the Oakland Planet Fitness, including a report on October 3 that he was "slamming weights

8    down," that on October 16 the Director of Operations asked gym staff to watch him carefully, that

9    on November 10 he heard a staff member say to him "Have a good day, bum," although the staff

10   member denied calling him a bum, and that there were "multiple incidents" in December 2021

11   where other gym patrons and staff members felt uncomfortable.  *Id.* at 7-9.  Floyd was thereafter

12   banned from all Planet Fitness locations in the Bay Area.  *Id.* at 9.

13         On July 3, 2023, Floyd filed his initial complaint in the Alameda Superior Court, Case No.

14   23CV037550, naming "Planet Fitness of Oakland, CA," as the defendant.  ECF No. 1-1; Ex. A.

15   On January 30, 2024, Floyd filed the First Amended Complaint naming Saber Fitness

16   Hegenberger, LLC.  He asserts all relevant events took place between July 1 and December 30,

17   2021.  First Am. Compl. at 2.  He brings ten causes of action: (1) 42 U.S.C. § 1981; (2) 42 U.S.C.

18   § 2000a; (3) California's Unruh Civil Rights Act, Cal. Civ. Code § 51; (4) Cal. Civ. Code § 51.5;

19   (5) California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200; (6)

20   California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750; (7) Negligent

21   Training and Supervision; (8) "Restatement (Third) of Law, Agency Law, Agency § 7.04, § 7.06,

22   § 7.07, § 7.08 – Principal's Liability to a Third Party"; (9) Negligent Infliction of Emotional

23   Distress; and (10) Cal. Civ. Code § 1714.

24         Saber removed the matter to this Court on March 1, 2024.

25              **III.   APPLICATION TO PROCEED IN FORMA PAUPERIS**

26         Floyd filed an in forma pauperis application on March 14, 2024.  ECF No. 19.  Under 28

27   U.S.C. § 1915, the Court may authorize the commencement of an action without the payment of

28   the necessary filing fees if it believes the commencing party cannot afford to pay such fees.  *See*

United States District Court
Northern District of California

2

United States District Court
Northern District of California

1   28 U.S.C. § 1915(a)(1).

2       Floyd submitted the required documentation demonstrating an inability to pay the costs of

3   this action, and it is evident from the application that the listed assets and income are insufficient

4   to enable payment of the fees.  However, although Floyd was the commencing party in state court,

5   Saber, as the removing party, is the commencing party here.  *See RM White LLC v. Ramirez*, 2024

6   WL 1051000, at *1 (N.D. Cal. Feb. 14, 2024) (removing party is the commencing party).  Saber

7   has paid the filing fee and already served Floyd.  *See* ECF No. 1.  Accordingly, the Court

8   **DENIES** Plaintiff's application as moot.

9                           **IV.   MOTION TO REMAND**

10      Floyd has also filed a "Motion and Request for Remand to State Court, AND Plaintiff's

11  Opposition to Defendant's Motion to Dismiss."  ECF No. 15.  As a preliminary matter, Floyd

12  improperly combined his motion to remand and his opposition to Saber's motion to dismiss in one

13  document.  Civil Local Rule 7-1(a) provides that "[a]ny written request to the Court for an order

14  must be presented by [among other options] . . . A duly noticed motion pursuant to Civil L.R. 7-

15  2."  Local Rule 7-2(a) provides that "[a]ll motions must be filed, served and noticed in writing on

16  the motion calendar of the assigned Judge for hearing not less than 35 days after filing of the

17  motion."  As Floyd did not file a duly noticed motion, the Court has discretion to deny his motion

18  to remand.  *See Tri-Valley CAREs v. U.S. Dep't of Energy*, 671 F.3d 1113, 1131 (9th Cir. 2012)

19  ("Denial of a motion as the result of a failure to comply with local rules is well within a district

20  court's discretion.") (citation omitted).  However, as Floyd is representing himself in this matter,

21  and both the motion to remand and motion to dismiss have been fully briefed, the Court shall

22  consider Floyd's motion on the merits.  Moving forward, Floyd is advised that he must comply

23  with the Federal Rules of Civil Procedure and the Court's Civil Local Rules.

24      Floyd "requests this Court to remand this case in its entirety back to the original state court

25  proceedings, before deciding on any motions.  The Defendant's removal was improper."  Mot. to

26  Remand at 1.  Floyd does not argue that the Court lacks original jurisdiction.  Instead, he argues

27  the statutory basis for removal should have been 28 U.S.C. § 1443, stating he "believe[s] the

28  removal should have been under 28 U.S.C. § 1443.  But, it was removed under 28 U.S.C. § 1441."

United States District Court
Northern District of California

1    Floyd Decl. at 2, ECF No. 15-1.  As Floyd states removal should have been under § 1443, he

2    appears to concede that this Court has original jurisdiction.  After Saber pointed this out (Opp'n at

3    2), Floyd responded: "As the Plaintiff is the master of his complaint, he may bring his complaint

4    within any court that has jurisdiction.  The state court which the Plaintiff brought the action under

5    has original jurisdiction.  The Plaintiff does not concede the removal to this Court was proper, nor

6    does he concede this Court has original jurisdiction."  Pl.'s Reply at 2, ECF No. 22.

7         Under 28 U.S.C. § 1441(a), a defendant may remove to federal court any matter that

8    originally could have been filed in federal court.  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392

9    (1987).  Federal courts are courts of limited jurisdiction and possess subject matter jurisdiction in

10   civil cases based only on federal question or diversity jurisdiction.  *Id.*; *see* 28 U.S.C. §§ 1331,

11   1332.  "The[ ] statutory procedures for removal are to be strictly construed," *Syngenta Crop Prot.,*

12   *Inc. v. Henson*, 537 U.S. 28, 32 (2002), and there is a "strong presumption against removal

13   jurisdiction," *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 885 (9th Cir. 2006).  The

14   removing defendant bears the burden of establishing by a preponderance of the evidence that

15   removal was proper.  *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d

16   1102, 1106-07 (9th Cir. 2010).  "If at any time before final judgment it appears that the district

17   court lacks subject matter jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c).

18   "[W]hether remand is proper must be ascertained on the basis of the pleadings at the time of

19   removal."  *Broadway Grill, Inc. v. Visa Inc.*, 856 F.3d 1274, 1277 (9th Cir. 2017).  "Where doubt

20   regarding the right to removal exists, a case should be remanded to state court."  *Matheson v.*

21   *Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003).

22        The Court finds it has original jurisdiction under 28 U.S.C. § 1331, which provides that

23   "district courts shall have original jurisdiction of all civil actions arising under the Constitution,

24   laws, or treaties of the United States."  Floyd's First Amended Complaint asserts two federal

25   causes of action: (1) 42 U.S.C. § 1981 and (2) 42 U.S.C. § 2000a.  First Am. Compl., Ex. B to

26   Notice of Removal at 16-18, ECF No. 1-2.  Moreover, this Court has supplemental jurisdiction

27   over Floyd's state-law claims pursuant to 28 U.S.C. § 1367, and such claims are removable under

28   28 U.S.C. § 1441(c) because the claims are so related that they form part of the same case or

4

1   controversy.  The events giving rise to Floyd's claims all "occurred at the Planet Fitness gyms

2   located in the Bay Area, CA" and concern his gym membership.  First Am. Compl. at 9.

3   Accordingly, they all arise out of a common nucleus of operative fact.

4         Under § 1441, "any civil action brought in a State court of which the district courts of the

5   United States have original jurisdiction" may be removed to federal court, "[e]xcept as otherwise

6   expressly provided by Act of Congress."  Floyd asserts 28 U.S.C. § 1443 is "one of the otherwise

7   expressed exceptions," and that Saber must remove on that statutory basis.  Mot. to Remand at 4.

8   However, § 1443 is not an antiremoval provision – it expressly allows for removal of certain civil

9   rights cases.[2]  Regardless, courts have interpreted this exception clause "as a reference to

10  antiremoval provisions in other federal statutes."  *See Coffey v. Ripple Labs Inc.*, 333 F. Supp. 3d

11  952, 962 (N.D. Cal. 2018) ("[U]unless some other federal statute says otherwise, the action may

12  be removed under § 1441(a) if the district court would have had original jurisdiction.").  The

13  Court also notes it is not up to Floyd to determine which statutory basis Saber must assert as "a

14  defendant may successfully remove an action from state to federal court by pointing to and

15  complying with a statutory basis for removal, not every statutory basis for removal."  *Id.* at 960.

16        Floyd also appears to argue the case should be remanded based on preemption, asserting

17  that "Federal law does not predominate nor preempt state law in this case."  Mot. to Remand at 4.

18  To support his argument, Floyd cites *Rains v. Criterion Sys., Inc.*, 80 F.3d 339 (9th Cir. 1996), a

19  case in which the plaintiff asserted all state-law claims.  After the case was removed to federal

20  court, the court had to determine whether federal jurisdiction existed.  *Id.* at 342.  The portion of

21  the case that Floyd cites discusses the independent corollary to the well-pleaded complaint rule,

22  known as the complete preemption doctrine.  This doctrine allows a court to "convert[] an

23

24  _____
    [2] 28 U.S.C. § 1443 provides as follows:

25  "Any of the following civil actions or criminal prosecutions, commenced in a State court may be
    removed by the defendant to the district court of the United States for the district and division

26  embracing the place wherein it is pending:
    (1) Against any person who is denied or cannot enforce in the courts of such State a right under

27  any law providing for the equal civil rights of citizens of the United States, or of all persons within
    the jurisdiction thereof;

28  (2) For any act under color of authority derived from any law providing for equal rights, or for
    refusing to do any act on the ground that it would be inconsistent with such law."

United States District Court
Northern District of California

ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule" when "the pre-emptive force of a statute is so extraordinary." *Id.* at 344 (internal quotations omitted).  The court found the doctrine inapplicable because "Title VII does not completely preempt state law." *Id.* at 345.

In this case, there is no preemption issue related to a state-law claim, nor has any issue of federal preemption been raised as a basis for jurisdiction.  The Court has jurisdiction because Floyd asserts federal claims under federal statutes.  Unlike the plaintiff in *Rains*, Floyd does not only assert state-law claims, and the complete preemption doctrine is inapplicable to his federal claims.  And, as to his state-law claims, the Court has supplemental jurisdiction.  For these reasons, the Court finds it has original jurisdiction over Floyd's claims.  Accordingly, the Court **DENIES** Floyd's motion to remand.

## V.   MOTION TO DISMISS

Saber moves to dismiss on several grounds:

1. Floyd fails to state a claim upon which relief can be granted.

2. Counts 1, 2, 3, 7, 9, and 10 are time-barred by the applicable statutes of limitations; and

3. Floyd's claim for punitive damages is improper

Mot. to Dismiss at 2.  Saber also moves under Rule 12(e) for a more definite statement of the claims that remain.

### A.    Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim.  A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (citation and quotation marks omitted).  Rule 8 provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Thus, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plausibility does not mean probability, but it requires "more than a sheer possibility

6

that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009).  A complaint

must therefore provide a defendant with "fair notice" of the claims against it and the grounds for

relief.  *Twombly*, 550 U.S. at 555 (quotations and citation omitted).

In considering a motion to dismiss, the court accepts factual allegations in the complaint as

true and construes the pleadings in the light most favorable to the nonmoving party.  *Manzarek v.

St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *Erickson v. Pardus*, 551

U.S. 89, 93–94 (2007).  However, "the tenet that a court must accept a complaint's allegations as

true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere

conclusory statements."  *Iqbal*, 556 U.S. at 678.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no

request to amend the pleading was made, unless it determines that the pleading could not possibly

be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en

banc) (citations and quotations omitted).  A court "may exercise its discretion to deny leave to

amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to

cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . .,

[and] futility of amendment.'"  *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th

Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## B.    Statute of Limitations

Saber first argues Floyd's claims 1, 2, 3, 7, 9, and 10 are barred by the applicable statute of

limitations.  The statute of limitations for federal civil rights claims under 42 U.S.C. §§ 1981 and

1983 is "governed by the forum state's statute of limitations for personal injury actions."  *Bonelli

v. Grand Canyon Univ.*, 28 F.4th 948, 951 (9th Cir. 2022) (internal quotations and citations

omitted).  Under California law, the limitations period for personal injury actions is two years.

Cal. Civ. Pro. Code § 335.1.  "The general rule is that a civil rights claim accrues under federal

law 'when the plaintiff knows or has reason to know of the injury which is the basis of the

action.'"  *Bonelli*, 28 F.4th at 952 (quoting *Lukovsky v. City & Cty. of San Francisco*, 535 F.3d

1044, 1048 (9th Cir. 2008)).  The statute of limitations for a claim under the Unruh Act is two

years.  Cal. Civ. Proc. Code § 335.1; *Gatto v. County of Sonoma*, 98 Cal. App. 4th 744, 760 (2002)

United States District Court
Northern District of California

1    (explaining that claims under the Unruh Civil Rights Act are subject to the statute of limitations

2    for personal injury actions).  The statute of limitations for negligence claims is two years.  Cal.

3    Civ. Proc. Code § 335.1.  A negligence claim normally accrues upon occurrence of the last act

4    necessary to complete the cause of action.  *Id*. § 312; *see Fox v. Ethicon Endo-Surgery*, Inc., 35

5    Cal. 4th 797, 806 (2005) ("[A] cause of action accrues at 'the time when the cause of action is

6    complete with all of its elements.'") (internal citation omitted).

7         As noted above, Floyd brought his initial complaint against "Planet Fitness of Oakland,

8    CA." on July 3, 2023, and he filed the First Amended Complaint naming Saber Fitness

9    Hegenberger, LLC on January 30, 2024.  As he asserts all relevant events took place between July

10    1 and December 30, 2021, the statute of limitations expired on December 30, 2023.  Saber argues

11    Floyd "intentionally filed his lawsuit against . . . Planet Fitness . . . [d]espite knowing the name of

12    the proper entity (Saber Fitness Hegenberger, LLC), both because it is listed in his Membership

13    Agreement (signed in September 2021), and was disclosed to him by Saber's counsel (September

14    2023)."  Mot. to Dismiss at 6.  It argues Floyd "refused for months to amend his pleadings to

15    name an actual company, or serve Saber. . . .  Indeed, because Plaintiff continued delivering legal

16    documents to gym employees at a local Planet Fitness in Oakland, in September 2023, Saber's

17    counsel contacted Plaintiff to seek clarity as to which entity he was trying to sue, and made Saber

18    available for service if Plaintiff was actually intending to sue Saber."  *Id.*  Thus, the issue is

19    whether Floyd's amended complaint relates back to his original.

20         If state law provides the applicable statute of limitations, which is the case here, the Court

21    must consider both state and federal relation back doctrines and "employ whichever affords the

22    'more permissive' relation back standard."  *Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d

23    1191, 1201 (9th Cir. 2014).  In California, "[a]s a general rule, 'an amended complaint adding a

24    new defendant does *not* relate back to the filing of the original complaint and the statute of

25    limitations is applied as of the date the amended complaint is filed, not the date the original

26    complaint is filed.'"  *Hawkins v. Pac. Coast Bldg. Products, Inc.*, 124 Cal. App. 4th 1497, 1503

27    (2004) (emphasis in original) (quoting *Woo v. Superior Ct.*, 75 Cal. App. 4th 169, 175 (1999)).

28    However, if the amendment does not add a new defendant, but "simply corrects a misnomer by

United States District Court
Northern District of California

8

which an 'old' defendant was sued, case law recognizes an exception to the general rule of no relation back." *Id.*

Federal Rule of Civil Procedure 15(c)(1)(C) dictates that "[a]n amendment to a pleading relates back to the date of the original pleading when: . . . the amendment changes the party or the naming of the party against whom a claim is asserted," so long as "the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C).  The Ninth Circuit has further clarified that under Federal Rule of Civil Procedure 15(c)(1)(C), an amended complaint relates back to an original complaint only if the following conditions are met: "'(1) the basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party must or should have known that, but for a mistake concerning identity, the action would have been brought against it.' " *Butler*, 766 F.3d at 1202 (quoting *Schiavone v. Fortune*, 477 U.S. 21, 29 (1986)).

Under either standard, the Court finds Floyd should be permitted to relate the claims in his amended complaint against Saber back to his original complaint.  First, under Rule 15, there is no dispute that Saber and Planet Fitness are related entities.  *See* Mot. to Dismiss at 1 ("Plaintiff is a former gym member of Defendant's Planet Fitness gym.").  Second, Saber received such notice of the action that it will not be prejudiced in defending on the merits.  Saber admits that after Floyd "continued delivering legal documents to gym employees at a local Planet Fitness in Oakland, in September 2023, Saber's counsel contacted Plaintiff to seek clarity as to which entity he was trying to sue, and made Saber available for service if Plaintiff was actually intending to sue Saber." *Id.* at 6.  Third, but for Floyd's mistake concerning the identity of the entity he needed to sue, the action would have been brought against Saber.

Further, since the expiry of the statute of limitations is an affirmative defense, Saber bears the burden of establishing that Floyd knew of its true identity at the time he filed his original complaint.  *See Wyatt v. Terhune*, 315 F.3d 1108, 1117 (9th Cir. 2003) ("[I]t is well-settled that

United States District Court
Northern District of California

1   statutes of limitations are affirmative defenses, not pleading requirements."), *overruled on other*

2   *grounds by Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014).  It is not facially apparent that Floyd

3   knew Planet Fitness was not the proper entity, as that was the name of the gym to which he

4   belonged.  While Saber argues Floyd should have been aware because the membership agreement

5   he received in 2021 listed Saber Fitness Hegenberger, LLC, it presents no authority establishing

6   that a pro se plaintiff should be expected to know the difference between the name a company uses

7   for its business and that company's corporate name.  *See Hawkins*, 124 Cal. App. 4th at 1504-05

8   (applying the relation-back doctrine where plaintiff sued the correct party, his employer, but

9   named it as Basalite Corporation in the complaint, a fictional name under which the defendant

10  conducted business, instead of the defendant's proper corporate name, Pacific Coast Building

11  Products, Inc.); *Colton PDRC, LP v. Fam. Dollar, Inc.*, 2017 WL 7101149, at *6 (C.D. Cal. Sept.

12  28, 2017) ("Here, it is plausible that upon filing its original complaint, . . . Plaintiff was not aware

13  of Dollar Tree's alleged role in causing Family Dollar's termination of the lease.  Also, it is not

14  facially apparent from the FAC that Plaintiff knew that Dollar Tree Stores, Inc. was not the proper

15  entity as of November of 2016.").  As such, the Court finds California's misnomer rule applies

16  because Floyd appears to believe he sued the proper entity, but he used the wrong name in

17  identifying that entity.  *See Kerr-McGee Chemical Corp., v. Superior Court*, 160 Cal. App. 3d

18  594, 599 n. 4 (1984) ("[I]t is important to maintain the distinction between correcting an honest

19  error in the name of a correctly named party and joining a new party in the litigation for the first

20  time under the guise of a claim of misnomer.").

21          Accordingly, because Floyd filed his amended complaint to name the correct defendant,

22  and Saber has failed to meet its burden to establish that Floyd knew its true identity at the time he

23  filed his original complaint, the Court finds his claims relate back to the original complaint.  The

24  Court therefore **DENIES** Saber's motion to dismiss on statute of limitations grounds.

25  **C.      Causes of Action**

26          **1.      Count One: 42 U.S.C. § 1981**

27          In his first cause of action under 42 U.S.C. § 1981, Floyd alleges he is a member of a

28  protected class (African American male), he sought to use the Planet Fitness facilities as provided

by under his contract with Saber, he was denied the services of the gym when he was "harassed and forced to exit the gym on multiple occasions, after not having committed any serious infractions," his membership was subsequently canceled, and he "received services in a markedly hostile manner that a reasonable person would find objectively discriminatory." First Am. Compl. at 9. Saber argues this claim must be dismissed because Floyd "fails to allege any facts to support he was subject to discrimination, let alone intentional discrimination" and "fails to allege facts to support that he was denied benefits under a contractual relationship, or any facts to support that he was treated in a hostile manner." Mot. to Dismiss at 8.

Section 1981 prohibits racial discrimination in contractual relationships. 42 U.S.C. § 1981(a); *see also Bonelli*, 28 F.4th at 952 ("§ 1981 . . . forbids racial discrimination in contractual relationships"). Because claims brought under § 1981 are grounded in the Equal Protection Clause of the Fourteenth Amendment, an "essential element" of a valid § 1981 action is that the defendant "acted with the *intent* to discriminate on the basis of race." *McKenzie v. City of Milpitas*, 738 F. Supp. 1293, 1301 (N.D. Cal. 1990), *aff'd*, 953 F.2d 1387 (9th Cir. 1992) (emphasis in original); *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982) ("§ 1981, like the Equal Protection Clause, can be violated only by purposeful discrimination."). Thus, to establish a claim under § 1981, the plaintiff must show overt acts by the defendant, "coupled with some direct evidence that the defendant's conduct was motivated by racial animus." *Evans v. McKay*, 869 F.2d 1341, 1345 (9th Cir. 1989).

Other than stating that he is African American, Floyd does not identify any evidence that the allegations in his complaint were motivated by his race, such as statements or conduct that would give rise to an indication that race was a motivating factor. Floyd argues he "has shown that a manager at the Defendant's place of business informed his employees to closely watch the Plaintiff." Opp'n at 6. He then makes other allegations that he believes support racial discrimination, including that he "was called a 'bum' by employees, not allowed to purchase a lock, and flagged for other invidious measures such as denying a picture and greeting someone with a touch on the arm." *Id.* However, "[m]ere conclusory allegations of intentional discrimination will not suffice." *Gray v. Apple Inc.*, 2017 WL 1709327, at *3 (N.D. Cal. May 3,

2017) (citing *Iqbal*, 556 U.S. at 678).  "Rather, Plaintiff must allege some facts that plausibly give

rise to an inference that race was the reason for Defendant's actions."  *Id.* (dismissing § 1981

claim where plaintiff "generically conclude[d], without any factual support, that Defendant has

'corporate-wide policies and practices' that 'requir[e] security personnel [to] target people of color

for surveillance as soon as they enter Apple stores,'") (citation omitted); *see also Lee v.*

*Ehlenbach*, 2018 WL 2010514, at *5 (E.D. Cal. Apr. 30, 2018) (dismissing § 1981 claim where

plaintiff asserted "that the defendants are 'of the White race group' while he is African–

American," but otherwise did not identify any evidence that defendants' actions were motivated

by his race and did not identify "any statements made by the defendants or any conduct that would

give rise to an indication that race was a motivating factor."); *Williams v. Tobener*, 2016 WL

5235039, at *2 (N.D. Cal. Sept. 22, 2016) ("Plaintiff alleges that Defendants breached their

contingency fee agreement 'because she is black.'  However, mere conclusory allegations of

intentional discrimination will not suffice."); *Mesumbe v. Howard Univ.*, 706 F. Supp. 2d 86, 92

(D.D.C. 2010) ("To plead intentional discrimination, 'plaintiff cannot merely invoke his race in

the course of a claim's narrative and automatically be entitled to pursue relief.  Rather, plaintiff

must allege some facts that demonstrate that race was the reason for defendant's actions.'")

(quoting *Bray v. RHT, Inc.*, 748 F. Supp. 3, 5 (D.D.C. 1990)).  Floyd's amended complaint is

devoid of any facts supporting the inference that race motivated Saber's actions.

Accordingly, the Court **GRANTS** Saber's motion as to his § 1981 claim.  Dismissal is

with leave to amend, but only if Floyd can allege overt acts by Saber, coupled with some direct

evidence that its conduct was motivated by racial animus.

### 2.     Count Two: 42 U.S.C. § 2000a

Title II of the Civil Rights Act of 1964 provides: "All persons shall be entitled to the full

and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations

of any place of public accommodation, as defined in this section, without discrimination or

segregation on the ground of race, color, religion, or national origin."  42 U.S.C. § 2000a(a).

"[T]he overriding purpose of Title II [was] to [re]move the daily affront and humiliation involved

in discriminatory denials of access to facilities ostensibly open to the general public."  *Daniel v.*

*Paul*, 395 U.S. 298, 307-08 (1969) (quotation omitted).  Floyd alleges he is a member of a protected class, the gym is a place of public accommodation, "he was denied the services of the gym, harassed on multiple occasions by gym members and staff, and forced to leave the gym on multiple occasions," and he "has not seen other gym members, who have a different ethnicity than the Plaintiff, treated in a similar manner."  First Am. Compl. at 11.  Saber argues this claim fails because Floyd failed to exhaust his administrative remedies and he fails to state a claim.  Mot. to Dismiss at 9-11.

### a.      Exhaustion of Administrative Remedies

Under 42 U.S.C. § 2000a-3(c), plaintiffs must give written notice of the alleged act of discrimination to the appropriate state or local agency if the state has a law prohibiting the alleged conduct.  California has such a law.  *See* Cal. Civ. Code §§ 51 (prohibiting discrimination in "all business establishments of every kind whatsoever"), 52 (permitting California Attorney General to enforce violations).  Floyd does not allege he filed written notice of Saber's allegedly discriminatory actions with the appropriate state authority, and he has not attached any documentation to his complaint showing that he did so.  Under § 2000a-3(c), he may not file suit under § 2000a until 30 days after he files written notice of the alleged discrimination.  "This requirement is jurisdictional."  *Bunch v. Victor Valley Domestic Violence, Inc.*, 2019 WL 6728445, at *2 (C.D. Cal. Dec. 11, 2019) (citing *Stearnes v. Baur's Opera House, Inc.*, 3 F.3d 1142, 1144 (7th Cir. 1993)).  As such, it appears that Floyd's Title II claim may be defective.

### b.      Failure to State a Claim

Saber also argues Floyd's Title II claim must fail because he seeks damages, he fails to establish Planet Fitness is a place of public accommodation, and he has not plausibly alleged that Saber discriminated against him based on his race.

A private individual may only obtain injunctive relief under Title II as it does not authorize a claim for money damages.  *See* 42 U.S.C. § 2000a–3; *see also Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002).  Thus, to the extent Floyd seeks damages under Title II, the claim is not cognizable and must be dismissed.

Even if Floyd seeks only injunctive or relief, Saber argues he has provided no facts to

United States District Court
Northern District of California

support his allegation that Planet Fitness is a place of public accommodation.  It is true Title II only applies to a "place of public accommodation," including (1) "any inn, hotel, motel, or other establishment which provides lodging to transient guests"; (2) "any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises"; (3) "any motion picture house, theater, concert hall, sports arena, stadium or other place of exhibition or entertainment"; and (4) "any establishment (A)(i) which is physically located within the premises of any establishment otherwise covered by this subsection, or (ii) within the premises of which is physically located any such covered establishment, and (B) which holds itself out as serving patrons of such covered establishment."  42 U.S.C. § 2000a(b).

Saber argues Title II "expressly excludes 'private club[s] or other establishment[s] not in fact open to the public,'" and that Planet Fitness qualifies as such because it "requires membership, as even Floyd himself alleges."  Mot. to Dismiss at 10 (quoting *Id.* § 2000a(e) and citing First Am. Compl. at 5).  However, other courts have found that gyms qualify as places of public accommodation under the statute.  *See Zinman v. L.A. Fitness Int'l LLC*, 2021 WL 2530271, at *4 (S.D. Fla. June 21, 2021), *aff'd in part, appeal dismissed in part*, 2022 WL 8019384 (11th Cir. Oct. 14, 2022); *Jalal v. Lucille Roberts Health Clubs Inc.*, 254 F. Supp. 3d 602, 606 (S.D.N.Y. 2017) ("Defendant concedes that its gyms are places of public accommodation within the meaning of the statute."); *Johnson v. Planet Fitness*, 2023 WL 2814622, at *1 (D. Utah Apr. 6, 2023) (finding plaintiff could state a claim under Title II where he alleged he was a "victim of harassment, racial discrimination, and cruel and unusual punishment" at a Planet Fitness gym where he held a membership).  Thus, for the purpose of resolving this motion, the Court assumes that Floyd sufficiently alleges that Saber's facility is a place of public accommodation.

Saber also argues that "[a]side from his personal belief that other gym members of another race were treated differently, he fails to plead facts to support his opinion that he was discriminated against or harassed due to his race.  Plaintiff does not point to any instances of discriminatory conduct."  Mot. to Dismiss at 10-11.  The Court agrees.  As noted above, other than stating that he is African American, Floyd has not adequately alleged that Saber's actions were motivated by his race.  To bring a claim for discrimination based on race, Floyd must allege more

14

1    "than a conclusory allegation that mirrors the language of § 2000a(a)."  *Ebeid v. Facebook, Inc.*,

2    2019 WL 2059662, at *5 (N.D. Cal. May 9, 2019); *Iqbal*, 556 U.S. at 678.

3              **c.        Summary**

4              The Court finds Floyd's Title II claim is subject to dismissal and therefore **GRANTS**

5    Saber's motion as to this claim.  Dismissal is with leave to amend, but only Floyd can (1) show he

6    exhausted his administrative remedies and (2) allege more than conclusory allegations that Saber's

7    conduct was motivated by racial animus.

8         **3.        Count Three: Cal. Civ. Code § 51**

9              The Unruh Civil Rights Act provides: "All persons within the jurisdiction of this state are

10   free and equal, and no matter what their sex, race, color, religion, ancestry, national origin,

11   disability, medical condition, genetic information, marital status, or sexual orientation are entitled

12   to the full and equal accommodations, advantages, facilities, privileges, or services in all business

13   establishments of every kind whatsoever."  Cal. Civ. Code § 51(b).  The Act prohibits

14   "unreasonable, arbitrary, or invidious discrimination."  *Dallas and Lashmi, Inc. v. 7-Eleven, Inc.*,

15   112 F. Supp. 3d 1048, 1062 (C.D. Cal. 2015) (citing *Sunrise Country Club Ass'n v. Proud*, 190

16   Cal. App. 3d 377, 380 (1987)).  "Unreasonable, arbitrary, or invidious discrimination is present

17   where the defendant's policy or action 'emphasizes irrelevant differences' or 'perpetuates

18   [irrational] stereotypes.'"  *Id.* (citing *Kiore v. Metro Car Wash*, 40 Cal. 3d 24, 33 (1985)).  Proof

19   of intentional discrimination is necessary to establish an Unruh Act violation.  *Munson v. Del*

20   *Taco, Inc.*, 46 Cal. 4th 661, 664 (2009).

21             Floyd alleges he was

22                     not provided with the full and equal accommodations of Planet
                       Fitness gyms in the Bay Area, despite paying for the gym's services.
23                     Before the Plaintiff's Oakland membership, Bay Area PF gyms
                       removed the Plaintiff from their gyms for invidious reasons.  During
24                     the Plaintiff's Oakland membership, the Plaintiff could sense
                       negativity from some staff members.   The Plaintiff was finally
25                     ordered to leave the gym after talking to a woman.  In all occasions,
                       the Plaintiff did nothing to warrant his removal from the gym.  Indeed,
26                     the Unruh Civil Rights Act will serve to 8 banish the arbitrary and
                       invidious discrimination the Plaintiff has endured.
27

28   First Am. Compl. at 12.  Saber argues these allegations are no more than bare assertions that do

United States District Court
Northern District of California

1  not support that the discrimination was unreasonable, arbitrary or invidious.  Mot. to Dismiss at

2  12.  It further argues that "the 'mere possibility' that Saber engaged in conduct to violate the

3  Unruh Act is insufficient to meet the pleading requirements."  *Id.*

4        Floyd's allegations mirror those in claims one and two, which the Court has dismissed.  As

5  with those claims, "[t]he bare possibility of discrimination premised on speculation, without any

6  underlying factual basis, is insufficient to state a claim under the Unruh Act."  *Dallas and Lashmi*,

7  112 F. Supp. 3d at 1063 (dismissing Unruh Act claim where plaintiffs' racial discrimination claim

8  contained no allegations evidencing racial bias) (citing *Harris v. Capital Growth Investors XIV*, 52

9  Cal. 3d 1142, 1175 (1991)); *James v. U.S. Bancorp*, 2019 WL 3058971, at *7 (C.D. Cal. Jan. 11,

10 2019) (dismissing race discrimination claim under the Unruh Act where plaintiffs alleged bank

11 accounts were opened for people of other races, "[b]ut taking this fact as true, it still stops short of

12 the line between possibility and plausibility of entitlement to relief" . . . [b]ecause simply allowing

13 customers of other races to open accounts, without more, does not plausibly suggest that the

14 employees discriminated against Plaintiffs) (citing *Iqbal*, 556 U.S. at 678).  Floyd supports his

15 claim by alleging that "Bay Area PF Gyms removed [him] from their gyms for invidious reasons,"

16 and that he endured "arbitrary and invidious discrimination."  First Am. Compl. at 1.  But these

17 are no more than "bare assertions . . . amounting to nothing more than a 'formulaic recitation of

18 the elements,'" which are not entitled to the assumption of truth at the motion to dismiss stage.

19 *Iqbal*, 556 U.S. at 681.  His allegations that he "could sense negativity from some staff members,"

20 and that he was "finally ordered to leave the gym after talking to a woman" do not support that the

21 discrimination was "unreasonable, arbitrary or invidious."  *Sunrise Country Club Ass'n*, 190 Cal.

22 App. 3d at 381 ("[T]he Unruh Civil Rights Act does not purport to prohibit all differences in

23 treatment or accommodations offered, only unreasonable, arbitrary or invidious discrimination.").

24 The "mere possibility" that Saber engaged in conduct to violate the Unruh Act is insufficient to

25 meet the pleading requirements.  *Iqbal*, 556 U.S. at 679.

26        As Floyd has not alleged sufficient facts to plausibly suggest entitlement to relief under the

27 Unruh Act, the Court **GRANTS** Saber's motion as to this claim.  Because Floyd is pro se and it is

28 not clear that the complaint's deficiencies could not be cured by amendment, the Court grants him

16

leave to amend as to this claim.

### 4. Count Four: Cal. Civ. Code § 51.5

Section 51.5 of the California Civil Code prohibits a "business establishment" from discriminating against, boycotting or blacklisting, or refusing to contract with any person on account of a protected characteristic. The Ninth Circuit considers it to be a "mere extension" of the Unruh Act. *Strother v. S. California Permanente Med. Grp.*, 79 F.3d 859, 875 (9th Cir. 1996), *as amended on denial of reh'g* June 3, 1996) (citing *Roth v. Rhodes*, 25 Cal. App. 4th 530, 537 (1994) ("Section 51.5 expands on section 51 by, inter alia, specifying forms of discrimination, including refusal to deal.")). Thus, although section 51.5 is not technically part of the Unruh Act, the analysis under the section is the same as the analysis for the purposes of the Act. *Semler v. Gen. Elec. Cap. Corp.*, 196 Cal. App. 4th 1380, 1404 (2011) (concluding that a complaint that failed to allege a violation of the Unruh Act also failed to allege a violation of section 51.5). Thus, Floyd's claim under section 51.5 fails for the same reasons his claim under the Unruh Act fails. The Court therefore **GRANTS** Saber's motion as to this claim. Because Floyd is pro se and it is not clear that the complaint's deficiencies could not be cured by amendment, the Court grants him leave to amend as to this claim.

### 5. Count Five: Cal. Bus. & Prof. Code § 17200

Under the UCL, any person or entity that has engaged, is engaging, or threatens to engage "in unfair competition may be enjoined in any court of competent jurisdiction." Cal. Bus. & Prof. Code § 17203. The UCL's "purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 320 (2011). "Unfair competition" includes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. Each prong of the UCL is a separate and distinct theory of liability. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009). The UCL's coverage is "sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (internal quotations and citation omitted).

United States District Court
Northern District of California

1    Floyd alleges he

2        had a gym membership at Planet Fitness and expected the fair
         accommodations any patron would expect from a gym membership.
3        Unfortunately, the Plaintiff was harassed and forcibly removed from
         Planet Fitness on multiple occasions; the Plaintiff never committed a
4        serious infraction.  The Plaintiff has lost money, time, and sanity as a
         result of the incidents with Planet Fitness.
5

6    First Am. Compl. at 12.  He further alleges "Planet Fitness, through this unfair act and business

7    practice, has violated this law." *Id.*  Saber argues Floyd's UCL claim is inadequately pled because

8    he does not address an unfair business practice it engaged in.[3]  Mot. to Dismiss at 13.  It further

9    argues that, to the extent Floyd seeks damages, they are unavailable as a remedy under the UCL.

10   *Id.* at 14.

11        The Ninth Circuit has acknowledged the following tests to determine what an "unfair"

12   business practice is: (1) "whether the challenged conduct is tethered to any underlying

13   constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an

14   antitrust law, or violates the policy or spirit of an antitrust law"; (2) "whether the practice is

15   immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers"; or (3)

16   "whether the practice's impact on the victim outweighs the reasons, justifications and motives of

17   the alleged wrongdoer."  *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1214–15 (9th Cir. 2020)

18   (internal quotations and citations omitted).

19        While Floyd alleges he "was harassed and forcibly removed from Planet Fitness on

20   multiple occasions" and that he "never committed a serious infraction," he fails to address the

21   unfair business practice Saber engaged in, nor does he allege any facts to support that the practice

22   was "unfair" under any of the tests described above.  Instead, he makes a singular, conclusory

23   allegation of law that "Planet Fitness, through this unfair act and business practice, has violated

24   this law."  First Am. Compl. at 12.  This conclusion is not entitled to the assumption of truth at the

25   _____

26   [3] Saber also argues that, even if the Court were to find Floyd sufficiently alleged an unfair
     business practice, his UCL claim still fails because he has not alleged that he lacks adequate legal
27   remedies.  Mot. to Dismiss at 14.  However, the Federal Rules of Civil Procedure permit pleading
     alternative remedies, *see, e.g.*, *Goldstein v. Gen. Motors LLC*, 517 F. Supp. 3d 1076, 1087-88
28   (S.D. Cal. 2021); Fed. R. Civ. P. 8(d)(3), and the Court therefore declines to dismiss on this
     ground.

1    motion to dismiss stage, as it is no more than a "bare assertion" that the business practice,

2    whatever it may be, is unfair.  *Iqbal*, 556 U.S. at 681.

3         Further, to the extent Floyd seeks damages under the UCL, they are unavailable as

4    recovery is limited to injunctive relief and restitution.  *See* Cal. Bus. & Prof. Code § 17203; *Cel-*

5    *Tech Commc'ns*, 20 Cal. 4th at 179 (explaining that "prevailing plaintiffs are generally limited to

6    injunctive relief and restitution . . . .  Plaintiffs may not receive damages, much less treble

7    damages, or attorney fees.").

8         Because Floyd has failed to allege an unfair business practice, the Court finds his UCL

9    claim is subject to dismissal and therefore **GRANTS** Saber's motion as to this claim.  Because

10   Floyd is pro se and it is not clear that the complaint's deficiencies could not be cured by

11   amendment, the Court grants him leave to amend as to this claim.

12        **6.      Count Six: Cal. Civ. Code § 1750**

13        California's Consumers Legal Remedies Act provides protection for consumers against

14   unfair and deceptive business practices.  *See Bescos v. Bank of America*, 105 Cal. App. 4th 378,

15   387 (2003).  The CLRA makes it unlawful for any person in a transaction to engage in certain

16   practices, including: "(1) passing off goods or services as those of another; (2) misrepresenting the

17   source, sponsorship, approval, or certification of goods or services; (3) misrepresenting the

18   affiliation, connection, or association with, or certification by, another."  Cal. Civ. Code §

19   1770(a)(1)-(23).  The statute defines "goods" as "tangible chattels" and "services" as "work, labor,

20   and services . . . including services furnished in connection with the sale or repair of goods."  *Id*. §

21   1761(a), (b).

22        Floyd alleges:

23        On multiple occasions, the Plaintiff has been forced to leave Planet
          Fitness gyms in the Bay Area.  In none of these occasions did the
24        Plaintiff do anything to cause his unwanted removal from the gym.
          The Plaintiff has been forced to cut workouts short.  The Plaintiff has
25        battled with post-traumatic stress since these incidents.  He is  seeking
          help from licensed professionals and attends support groups.  The
26        Plaintiff has also purchased a gym membership from a different gym,
          inconveniencing him when he travels.
27

28   First Am. Comp. at 14.  Saber seeks dismissal of this claim on two grounds: (1) Floyd failed to

United States District Court
Northern District of California

19

1    notify it of the claim and (2) Floyd fails to state a claim.  Mot. to Dismiss at 14-16.  The Court

2    finds Saber's notice argument dispositive.

3        A requirement for filing a claim for damages under the CLRA is that the plaintiff meet

4    certain notice standards prescribed in section 1782.  This section provides:

> (a) Thirty days or more prior to the commencement of an action for
> damages pursuant to this title, the consumer shall do the following:
>
> (1) Notify the person alleged to have employed or committed
> methods, acts, or practices declared unlawful by Section 1770 of the
> particular alleged violations of Section 1770.
>
> (2) Demand that the person correct, repair, replace, or otherwise
> rectify the goods or services alleged to be in violation of Section 1770
> . . . .  The notice shall be in writing and shall be sent certified or
> registered mail, return receipt requested, to the place where the
> transaction occurred or to the person's principal place of business
> within California.

12   Cal. Civ. Code § 1782.

13       Saber argues Floyd's CLRA claim should be dismissed because he has not alleged that he

14   provided notice as required under section 1782(a).  Mot. to Dismiss at 15.  In response, Floyd

15   argues that when his membership was canceled, he "emailed the Defendant about the problems

16   and issues with the Defendant's place of business," and he "believes he mailed the Defendant a

17   copy of the email, but the Plaintiff has no way to prove this."  Opp'n at 7.

18       Strict application of the notice procedure under section 1782 is required.  *See Von Grabe v.*

19   *Sprint PCS*, 312 F. Supp. 2d 1285, 1304 (S.D. Cal. 2003) (citing *Outboard Marine Corp. v.*

20   *Superior Court*, 52 Cal. App.3d 30, 40–41 (1975)).  As such, for any damages claim, Floyd must

21   show that, 30 days prior to commencing this action, he sent a notice and demand letter by certified

22   or registered mail.  Cal. Civ. Code § 1782.  The letter must have identified the particular violations

23   under section 1770 and demand that the defendant correct those violations.  *Id.*  Floyd has failed to

24   show he met this notice requirement, instead arguing he sent an email about "problems and issues"

25   and "believes" he also mailed it.  This is not enough to satisfy the statutory requirements.  *See Von*

26   *Grabe*, 312 F. Supp. 2d at 1304 (dismissing CLRA claims because the plaintiff sent a notice "that

27   was not timely, was not delivered in the proper fashion, and made no mention of § 1770 or any

28   specific violations thereof"); *Nacarino v. KSF Acquisition Corp.*, 642 F. Supp. 3d 1074, 1083

United States District Court
Northern District of California

20

1    (N.D. Cal. 2022) (explaining that "federal courts have required strict adherence to the statute's

2    notice provision . . . to accomplish the CLRA's goals of expeditious remediation before

3    litigation.") (internal quotations and citations omitted); *Laster v. T-Mobile USA, Inc.*, 407 F. Supp.

4    2d 1181, 1196 (S.D. Cal. 2005), *aff'd*, 252 F. App'x 777 (9th Cir. 2007) ("Because Plaintiffs

5    failed to provide notice to Defendants pursuant to § 1782(a), their claim for damages under the

6    CLRA must be dismissed with prejudice.").  As such, dismissal as to Floyd's claim for damages is

7    appropriate.

8        If Floyd is able to show he provided proper notice under § 1782, the Court also advises

9    him that his current allegations, including any claim for relief other than damages (for example,

10   injunctive relief) are inadequate.  First, he does not identify what "services" he sought to acquire.

11   Second, he does not identify the prohibited practice Saber engaged in.  Section 1770(a) lists 28

12   acts prohibited under the CLRA, and Floyd fails to allege that Saber has violated one of these

13   practices.  Floyd must allege more than a conclusory allegation that Saber's conduct violated the

14   CLRA, including the specific act he alleges Saber violated.  Accordingly, the Court **GRANTS**

15   Saber's motion to dismiss Floyd's CLRA claim.  Dismissal is with leave to amend, but only if

16   Floyd can: (1) for his damages claim, show he provided proper notice under Cal. Civ. Code 1782

17   by (a) sending a notice and demand letter by certified or registered mail 30 days prior to

18   commencing this CLRA action and (b) identifying in the letter the particular section 1770

19   violations he is alleging and demand that the defendant correct those violations; and (2) identify

20   what "services" he sought to acquire and identify the prohibited practice Saber engaged in under §

21   1770(a).

22           **7.    Count Seven: Negligent Training and Supervision**

23       Floyd titled his seventh claim as "Restatement (Second) of Agency § 213 - Negligent

24   Training and Supervision; Restatement (Second) of Torts§ 317 - Negligent Supervision."  First

25   A.m. Compl. at 13.  The Court construes this as a claim for negligent training and supervision.  He

26   alleges Saber "employs the persons responsible for the incidents that created this lawsuit.  Instead

27   of confronting the Plaintiff, the Director of Operations Brandon Romero ordered his staff to harass

28   the Plaintiff.  The Defendant remained the employer of those persons after the incidents occurred."

United States District Court
Northern District of California

1    *Id.* at 14.  Saber argues this claim must be dismissed because Floyd does not allege it knew or

2    should have known that retaining the Director of Operations created a particular risk or hazard and

3    that that harm materialized.  Mot. to Dismiss at 17-18.

4         Under California law, "an employer may be liable to a third person for the employer's

5    negligence in hiring, supervising, or retaining an employee who is incompetent or unfit."  *Diaz v.*

6    *Tesla, Inc.*, 598 F. Supp. 3d 809, 832 (N.D. Cal. 2022) (quoting *Delfino v. Agilent Techs., Inc.*,

7    145 Cal. App. 4th 790, 815 (2006) (internal quotations and alterations omitted).  For the employer

8    to be liable, "the employer must have known or should have known that retaining the employee

9    'created a particular risk or hazard and that particular harm materializes.'"  *Id.*

10        As a preliminary matter, Floyd did not respond to Saber's argument regarding this claim in

11   his opposition.  To the extent he failed to address Saber's arguments, the Court may consider the

12   claims abandoned.  *See Maldonado v. Morales*, 556 F.3d 1037, 1048 n. 4 (9th Cir. 2009)

13   ("Arguments made in passing and inadequately briefed are waived."); *Zhang v. Twitter Inc.*, 2023

14   WL 5493823, at *7 (N.D. Cal. Aug. 23, 2023) ("Where a party fails to address arguments against

15   a claim raised in a motion to dismiss, the claims are abandoned and dismissal is appropriate.")

16   (internal citation and quotations omitted); *Henry v. Napa Valley Unified*, 2016 WL 7157670, at *4

17   (N.D. Cal. Dec. 8, 2016) ("[F]ailure to address in an opposition arguments raised in an opening

18   motion . . . constitutes waiver or concession of the argument.").  However, even considering

19   Floyd's allegations, the Court finds he has failed to allege a claim for negligent training and

20   supervision.  While Floyd alleges Romero ordered his staff to harass him, and that Saber remained

21   Romero's employer after the incidents occurred, he does not allege that Saber "kn[ew] or should

22   have known that retaining [Romero] created a particular risk or hazard and that particular harm

23   materialize[d]."  *Diaz*, 598 F. Supp. 3d at 832.  As such, dismissal is appropriate, and the Court

24   therefore **GRANTS** Saber's motion as to this claim.  Because Floyd is pro se and it is not clear

25   that the complaint's deficiencies could not be cured by amendment, the Court grants him leave to

26   amend as to this claim.

27

28

### 8.      Count Eight: "Restatement (Third) of Law, Agency Law, Agency § 7.04, § 7.06, § 7.07, § 7.08 – Principal's Liability to a Third Party"

Floyd titles his eights claim "Restatement (Third) of Law, Agency Law, Agency § 7.04, § 7.06, § 7.07, § 7.08 – Principal's Liability to a Third Party" and alleges: "For the same reasons listed in all previous sections, the Defendant has violated this California law." First Am. Compl. at 15. Saber argues it "is unclear what Plaintiff's Eighth Cause of Action even is." Mot. to Dismiss at 18. The Court agrees. Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 545. Floyd's eighth claim fails on both grounds. Further, dismissal is appropriate because Floyd did not respond to Saber's argument about this claim in his opposition. *See Maldonado*, 556 F.3d at 1048 n. 4; *Zhang*, 2023 WL 5493823, at *7; *Henry*, 2016 WL 7157670, at *4. Accordingly, the Court **GRANTS** Saber's motion as to Floyd's eighth claim. To the extent he is able to state a valid claim, dismissal is with leave to amend.

### 9.      Count Nine: Negligent Infliction of Emotional Distress

Floyd titled his ninth claim as "Restatement (Third) Torts § 47 - Negligent Conduct Directly Inflicting Emotional Harm on Another." First Am. Compl. at 15. The Court construes this as a claim for negligent infliction of emotional distress. He alleges management and staff members at Planet Fitness had a "special relationship" with him as "a contracted customer of Planet Fitness," he relied on Planet Fitness "to have fair policies in place when there's a dispute between two patrons, or between patrons and staff," and "[d]etails of the events leading to this complaint show the exact opposite." First Am. Compl. at 16. Saber argues Floyd's claim fails because he fails to include facts that there was a special relationship that created a duty under the circumstances, fails to allege any of the elements of the claim, and fails to allege facts to support that he suffered severe emotional distress. Mot. to Dismiss at 19. In response, Floyd argues he "was called a bum by employees, . . . was flagged by Defendant's Director of Operations," and "was not allowed engage in meaningful conversations with other gym patrons. What tends to be dismissed by most as non-distressful to an 'average' man poses significant repercussions over time

23

1    to a person's behavior and character.  The fact is, the Defendant is responsible for the Plaintiff's

2    trauma."  Opp'n at 7

3           In California, negligent infliction of emotional distress is not an independent tort – "the tort

4    is negligence."  *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 984 (1993) (internal

5    citation omitted).  To prevail on a claim for negligent infliction of emotional distress, the plaintiff

6    must establish that: (1) the defendant was negligent; (2) the plaintiff suffered serious emotional

7    distress; and (3) the defendant's negligence was a substantial factor in causing the plaintiff's

8    serious emotional distress.  *Yau v. Santa Margarita Ford, Inc.*, 229 Cal. App. 4th 144, 160 (2014).

9    However, "unless the defendant has assumed a duty to plaintiff in which the emotional condition

10   of the plaintiff is an object, recovery is available only if the emotional distress arises out of the

11   defendant's breach of some other legal duty and the emotional distress is proximately caused by

12   that breach of duty."  *Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 961 (9th Cir. 2013) (quoting

13   *Potter*, 6 Cal. 4th at 985)); *Ciria v. City & Cty. of San Francisco*, 2024 WL 735128, at *7 (N.D.

14   Cal. Feb. 22, 2024) (noting that claims for negligent infliction of emotional distress require a

15   plaintiff to prove a special relationship exists).

16          Floyd alleges "management and staff members at Planet Fitness had a 'special

17   relationship'" with him, but he fails to include facts to support that Saber assumed a duty to him.

18   Under California law, there is ordinarily no duty to avoid negligently causing emotional distress to

19   another.  *Potter*, 6 Cal. 4th at 984.  "A plaintiff must allege a duty owed her regarding her

20   emotional condition or allege that her emotional distress arises out of the defendant's breach of

21   some other legal duty."  *Majo v. Sony Interactive Ent. LLC*, 2022 WL 1188871, at *9 (N.D. Cal.

22   Apr. 21, 2022) (citing *Potter*, 6 Cal. 4th at 984–85); *Brahmana v. Lembo*, 2010 WL 290490, at *2

23   (N.D. Cal. Jan. 15, 2010)).  "And in a case like this, which involves 'direct victim' liability, there

24   must be a duty 'that is assumed by the defendant or imposed on the defendant as a matter of law,

25   or that arises out of a relationship between' the parties.  *Id.* (quoting *Marlene F. v. Affiliated*

26   *Psychiatric Med. Clinic, Inc.*, 48 Cal. 3d 583, 590 (1989)).  While Floyd alleges a "special

27   relationship" exists, he alleges no facts to support this general allegation.  *Compare Lawson v.*

28   *Superior Ct.*, 180 Cal. App. 4th 1372, 1389–90 (2010) (California "[c]ase law holds that 'there is a

United States District Court
Northern District of California

24

1    special relationship between jailer and prisoner, imposing on the former a duty of care to the

2    latter'") (quoting *Giraldo v. Dep't of Corrections & Rehabilitation*, 168 Cal. App. 4th 231, 250

3    (2008)).  Floyd also fails to allege the other elements of negligence.  Besides citing to a case that

4    states, "[a] plaintiff in any negligence suit must demonstrate a legal duty to use due care, a breach

5    of such legal duty, and that the breach is the proximate or legal cause of the resulting injury," First

6    Am. Compl. at 15-16 (quoting *Kesner v. Superior Court*, 1 Cal. 5th 1132, 1142 (2016)), he makes

7    no mention of these elements, nor facts to support them.

8           The Court also finds Floyd fails to allege facts to support that he suffered severe emotional

9    distress.  "[T]o recover damages for emotional distress on a claim of negligence where there is no

10   accompanying personal, physical injury, the plaintiff must show that the emotional distress was

11   serious.'"  *Wong v. Jing*, 189 Cal. App. 4th 1354, 1377 (2010) (quoting *Molien v. Kaiser Found.*

12   *Hospitals*, 27 Cal. 3d 916, 927-30 (Cal. 1980)).  "Serious emotional distress" is "functionally the

13   same as the articulation of 'severe emotional distress,'" which means "emotional distress of such

14   substantial quality or enduring quality that no reasonable person in civilized society should be

15   expected to endure it."  *Id.* at 1376, 1378; *see also Boessenecker v. JPMorgan Chase Bank*, 2014

16   WL 107063, at *2 (N.D. Cal. Jan. 10, 2014) (granting defendant's motion to dismiss negligent

17   infliction of emotional distress claim because plaintiff failed to allege factual allegations to

18   support that "'a reasonable man, normally constituted, would be unable to adequately cope with

19   the mental stress engendered by the circumstances of the case'") (quoting *Wong*, 189 Cal. App.

20   4th at 1377–78).

21          Here, Floyd alleges in conclusory fashion that "he was traumatized by these incidents."

22   First Am. Compl. at 17:  He further alleges he "suffers from the trauma and embarrassment of

23   having been signaled out, harassed, and removed from the gym on multiple occasions," and

24   "attends support groups every week and is seeking professional counseling through a psychiatrist

25   or therapist."  *Id.* at 18.  These allegations do not evidence emotional distress rising to a level that

26   "a reasonable man, normally constituted, would be unable to adequately cope with the mental

27   stress engendered by the circumstances of the case."  *Wong*, 189 Cal. App. 4th at 1377–78

28   (internal quotation and citation omitted); *see also Boessenecker*, 2014 WL 107063, at *2 (finding

United States District Court
Northern District of California

plaintiffs failed to adequately allege serious emotional distress where they alleged the husband "has seen his doctor several times complaining of stress," they "were not taking vacations since they were waiting to hear from Chase," and they were "not spending any money")).

In sum, the Court finds Floyd's negligent infliction of emotional distress claim is subject to dismissal and therefore **GRANTS** Saber's motion as to this claim.  Because Floyd is pro se and it is not clear that the complaint's deficiencies could not be cured by amendment, the Court grants him leave to amend as to this claim.

### 10.   Count Ten: Cal. Civ. Code § 1714.

In his tenth claim, Floyd alleges: "For the same reasons listed in all previous sections, the Defendant has violated this California law."  First Am. Compl. at 16.  Section 1714(a) states "Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself."  "Section 1714(a) establishes a general duty of each person to exercise, in his or her activities, reasonable care for the safety of others."  *Mayall on Behalf of H.C. v. USA Water Polo, Inc.*, 909 F.3d 1055, 1060 (9th Cir. 2018) (internal quotation marks and citation omitted).

Saber argues this claim should be dismissed for failure to state a claim because it is based on the other theories of negligence alleged – negligent training and supervision and negligent infliction of emotional distress.  The Court agrees.  Section 1714 is a statute that establishes the general principle of negligence in California.  *See, e.g., Suarez v. Bank of Am. Corp.*, 2018 WL 2431473, at *29 (N.D. Cal. May 30, 2018) (analyzing negligence, negligent infliction of emotional distress, and section 1714 claims as negligence claims).  Floyd brings no allegations specific to this claim, stating only: "For the same reasons listed in all previous sections, the Defendant has violated this California law."  First Am. Compl. at 16.  Further, he does not address Saber's arguments regarding this claim in his opposition.  As such, dismissal is appropriate both because the Court has already dismissed his negligence claims and because Floyd did not respond to Saber's argument.  *See Maldonado*, 556 F.3d at 1048 n. 4; *Zhang*, 2023 WL 5493823, at *7;

*Henry*, 2016 WL 7157670, at *4.  Accordingly, the Court **GRANTS** Saber's motion as to Floyd's tenth claim under section 1714.  To the extent he is able to state a valid claim, dismissal is with leave to amend.

### 11.    Punitive Damages

Floyd seeks $2 million in punitive damages.  First Am. Compl. at 18.  Saber argues his claim should be dismissed because he fails to allege it acted with malice and because, under California law, punitive damages are only allowed where there is an adequate showing that an officer, director, or managing agent of Saber committed an act of oppression, fraud, or malice. Mot. to Dismiss at 21-22.

Floyd does not state under which of his claims he seeks punitive damages.  As noted above, under Title II of the Civil Rights Act, a plaintiff cannot recover damages and may only seek injunctive relief.  *See Jefferson v. City of Fremont*, 73 F. Supp. 3d 1133, 1144 (N.D. Cal. 2014) (citing *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 401 (1968)).  However, punitive damages are available under 42 U.S.C. § 1981.  *See Stallworth v. Nike Retail Servs., Inc.*, 2021 WL 5989962, at *16 (C.D. Cal. Nov. 12, 2021) (citing *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 460 (1975) ("An individual who establishes a cause of action under [§] 1981 is entitled to both equitable and legal relief, including compensatory and, under certain circumstances, punitive damages.").  Punitive damages are also available under California law if a plaintiff proves "by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice."  Cal. Civ. Code § 3294(a).

For punitive damages under both Floyd's federal and state claims, the Federal Rules of Civil Procedure set the pleading standards that must be met in federal court.  *Alacraz v. Marten Transp. Ltd.*, 2023 WL 4493725, at *3 (E.D. Cal. July 12, 2023) (citing *Neveu v. City of Fresno*, 392 F. Supp. 2d 1159, 1183-84 (E.D. Cal. 2005); *Clark v. Allstate Ins. Co.*, 106 F. Supp. 2d 1016, 1018 (S.D. Cal. 2000) ("Although Section 3294 provides the governing substantive law for punitive damages, California's heightened pleading standard irreconcilably conflicts with Rules 8 and 9 of the Federal Rules of Civil Procedure—the provisions governing the adequacy of pleadings in federal court.").  Federal Rule of Civil Procedure 9(b) provides in part that "Malice,

27

intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R.

Civ. P. 9(b); *Neveu*, 392 F. Supp. 2d at 1184.  "However, although malice, intent, and knowledge

may be alleged generally, the allegations that request punitive damages must still meet the

standards under [*Twombly* and *Iqbal*]."  *Alacraz*, 2023 WL 4493725, at *3 (citations omitted).

Here, Floyd fails to plead any allegations in support of his claim for punitive damages,

stating only that he "seeks an award of 2 million dollars in punitive damages."  First Am. Compl.

at 18.  In order for Plaintiffs' punitive damages claim to survive a motion to dismiss, Floyd "must

allege sufficient facts to state a plausible claim that [Defendant] engaged in vile, base, and

contemptible conduct."  *See Rhynes v. Stryker Corp.*, 2011 WL 2149095, at *5 (N.D. Cal. May 31,

2011) (dismissing plaintiff's punitive damages claim because the pled allegations were "merely

conclusory statements not entitled to the presumption of truth under *Iqbal* and *Twombly*").

Further, he does not address Saber's argument in his opposition, stating only that his "claims for

punitive damages should not be dismissed."  Opp'n at 8.  Therefore, the Court finds he has waived

any such argument and dismissal is appropriate.  *See Maldonado*, 556 F.3d at 1048 n. 4; *Zhang*,

2023 WL 5493823, at *7; *Henry*, 2016 WL 7157670, at *4.  Accordingly, the Court **GRANTS**

Saber's motion as to his claim for punitive damages.  Because Floyd is pro se and it is not clear

that the complaint's deficiencies could not be cured by amendment, the Court grants him leave to

amend.

## VI.   CONCLUSION

For the reasons stated above, the Court **DENIES** Floyd's in forma pauperis application,

**DENIES** Floyd's motion to remand, and **GRANTS** Saber's motion to dismiss.  The Court

**GRANTS** Floyd leave to file a second amended complaint, consistent with the instructions above,

by July 11, 2024.

### A.   Requirements for Amended Complaint

Because an amended complaint replaces the previous complaint, it may not incorporate

claims or allegations in the original complaint by reference.  *See Ferdik v. Bonzelet*, 963 F.2d

1258, 1262 (9th Cir. 1992).  Instead, any amendment must include all of the facts and claims to be

presented and all of the defendants that are to be sued.  In addition, any amended complaint must

include the following sections:

**Caption Page**
On the first page, list the names of the defendant(s), the case number used in this order (24-cv-01278-TSH), the title ("SECOND AMENDED COMPLAINT"), and write "Demand for Jury Trial" if you want your case to be heard by a jury.

**Form of Pleadings**
The factual allegations and claims must be written in numbered paragraphs, each limited as far as practicable to a single set of circumstances.

**Subject Matter Jurisdiction**
The first numbered paragraph in your complaint (labeled "Jurisdiction") should explain why this Court has the power to decide this kind of case. A federal court can hear a case based on a federal question jurisdiction (a violation of federal law under 28 U.S.C. § 1331) or diversity jurisdiction (when all plaintiffs and all defendants are citizens of different states disputing more than $75,000) under 28 U.S.C. § 1332.

**Parties**
In separate paragraphs for each party, identify the plaintiff(s) and defendant(s) in the case.

**Statement of Facts**
Explain the important facts in your case in numbered paragraphs, describing how the defendant(s) violated the law and how you have been injured.

**Claims**
Include a separate heading for each legal claim (Claim 1, Claim 2, etc.), identifying the specific law that you think the defendant(s) violated and explaining in numbered paragraphs what each defendant did to violate each law.

**B.     Resources**

Floyd may wish to seek assistance from the Legal Help Center, a free service offered by the Justice & Diversity Center of the Bar Association of San Francisco. You may request an appointment by emailing fedpro@sfbar.org or calling 415-782-8982. At the Legal Help Center, you will be able to speak with an attorney who may be able to provide basic legal help but not representation. More information is available at https://www.cand.uscourts.gov/pro-se-litigants/.

Floyd may also wish to obtain a copy of this District's *Handbook for Litigants Without a Lawyer*, which provides instructions on how to proceed at every stage of your case. The handbook is available in person at the Clerk's Office and online at:

https://www.cand.uscourts.gov/pro-se-litigants/.

   **IT IS SO ORDERED.**


Dated: June 11, 2024

                                              THOMAS S. HIXSON
                                              United States Magistrate Judge