UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL DEVIN FLOYD,<br><br>                    Plaintiff,<br><br>      v.<br><br>SABER FITNESS HEGENBERGER, LLC,<br><br>                    Defendant. | Case No.  24-cv-01278-TSH<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. No. 44 |

## I.    INTRODUCTION

Pending before the Court is Defendant Saber Fitness Hegenberger, LLC's Motion to Dismiss Plaintiff Michael Floyd's Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  ECF No. 44.  Floyd filed an opposition (ECF No. 47) and Saber filed a reply (ECF No. 48).[1]  The Court finds this matter suitable for disposition without oral argument and **VACATES** the August 29, 2024 hearing.  *See* Civ. L.R. 7-1(b).  For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** Saber's motion.[2]

## II.    BACKGROUND

### A.    Factual Background

Floyd, who is African-American, opened an all-access gym membership at Saber's Planet Fitness in Jacksonville, Florida in 2019.  Sec. Am. Compl. at 3, 11, ECF No. 40.  While visiting

---

[1] As part of its reply, Saber argues the Court should disregard Floyd's opposition because it violates certain procedural rules, including that the opposition is directed to the wrong judge and Floyd failed to include the noticed hearing date and time.  Reply at 2-3.  The Court finds it preferable to rule on the substance of this matter and therefore declines to disregard the opposition. However, the Court reminds Floyd that he must comply with all rules and procedures of the court.
[2] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF Nos. 16, 29, 36.

United States District Court<br>Northern District of California

1   family in San Jose in July 2021, he went to a Planet Fitness location there and was subsequently

2   told by his home gym in Florida that there was a complaint about his "vulgarity and personality."

3   *Id.* at 3-4.  Staff at the San Jose Planet Fitness said Floyd was no longer allowed there, but they did

4   not provide any further details.  *Id.* at 4.  Floyd began using other Planet Fitness gyms in the

5   nearby area, but "other incidents occurred" at these gyms, and his home gym in Florida

6   subsequently informed him that his membership was cancelled.  *Id.*

7         On September 17, 2021, Floyd opened another Planet Fitness membership in Oakland,

8   California.  *Id.* at 5.  Floyd alleges several incidents took place at the Oakland Planet Fitness,

9   including a report on October 13 that he was "slamming weights down," that on October 16 the

10  Director of Operations asked gym staff to watch him carefully, that on November 10 he heard a

11  staff member say to him "Have a good day, bum," although the staff member denied calling him a

12  bum, and that there were "multiple incidents" in December 2021 where other gym patrons and

13  staff members reported they felt uncomfortable.  *Id.* at 5-9.

14        Floyd alleges the "last incident," which is undated, occurred at the Planet Fitness on Ranch

15  Drive in Milpitas.[3]  *Id.* at 8-9.  Floyd alleges he "met a girl at the water fountain.  We both took an

16  interest in each other.  At no time did she tell me she wanted to stop talking to me, nor expressed

17  she was uninterested in me."  *Id.* at 9.  Floyd alleges "[s]he forgot her lock at home and when she

18  was about to buy a lock, I attempted to pay for it, when Majenta then told me I was making the

19  woman feel uncomfortable," even though the member "never expressed to me she was feeling

20  uncomfortable.  The Planet Fitness member also did not express to Majenta she was feeling

21  uncomfortable nor made any movements to indicate she was uncomfortable."  *Id.*  When Floyd

22  told "Majenta to mind her business, the woman even backed me up, telling Majenta not to tell me

23  anything and that she will talk to me when she wants.  Unfortunately, Majenta and other staff

24  members asked me to leave before I could purchase the lock for the woman."  *Id.*  After this

25  _____

26  [3] Saber argues any incidents related to the Planet Fitness on Ranch Drive in Milpitas are not
    relevant to this case because it does not own that Planet Fitness.  Mot. at 3 n. 2.  Floyd responds
27  that he is "not holding the Defendant responsible for the events [at the Milpitas location]: [he] is
    holding the Defendant responsible for its action taken after the event."  Opp'n at 6.  For purposes
28  of this motion, the Court shall consider these incidents as they relate to any alleged actions Saber
    may have taken as a result of these incidents.

United States District Court
Northern District of California

1    incident, Floyd was banned from all Planet Fitness locations in the Bay Area.  *Id.*

2    **B.    Procedural Background**

3          On July 3, 2023, Floyd filed his initial complaint in the Alameda Superior Court, Case No.

4    23CV037550, naming "Planet Fitness of Oakland, CA," as the defendant.  ECF No. 1-1; Ex. A.

5    On January 30, 2024, Floyd filed a First Amended Complaint naming Saber.  Not. of Removal,

6    Ex. B, ECF No. 1-2.  He alleged ten causes of action: (1) 42 U.S.C. § 1981; (2) 42 U.S.C. § 2000a;

7    (3) California's Unruh Civil Rights Act, Cal. Civ. Code § 51; (4) Cal. Civ. Code § 51.5; (5)

8    California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200; (6) California's

9    Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750; (7) Negligent Training and

10   Supervision; (8) "Restatement (Third) of Law, Agency Law, Agency § 7.04, § 7.06, § 7.07, § 7.08

11   – Principal's Liability to a Third Party"; (9) Negligent Infliction of Emotional Distress; and (10)

12   Cal. Civ. Code § 1714.

13         Saber removed the matter to this Court on March 1, 2024 and subsequently moved for

14   dismissal pursuant to Rule 12(b)(6).  ECF No. 6.  On June 11, 2024, the Court granted Saber's

15   motion, but with leave to amend.  ECF No. 39; *Floyd v. Saber Fitness Hegenberger, LLC*, 2024

16   WL 2971669, at *1 (N.D. Cal. June 11, 2024).

17         Floyd filed the operative Second Amended Complaint on July 11, 2024, re-alleging three

18   claims from his previous complaint (violation of the Unruh Act, violation of the UCL, and

19   Negligent Training and Supervision) and adding a new claim under California's Fair Employment

20   and Housing Act ("FEHA"), Cal. Gov't Code § 12940.  Sec. Am. Compl. at 10-16.

21         Saber filed the present motion to dismiss on July 25, 2024.

22                              **III.   LEGAL STANDARD**

23         A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal

24   sufficiency of a claim.  A claim may be dismissed only if it appears beyond doubt that the plaintiff

25   can prove no set of facts in support of his claim which would entitle him to relief."  *Cook v.*

26   *Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (citation and quotation marks omitted).  Rule 8

27   provides that a complaint must contain a "short and plain statement of the claim showing that the

28   pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Thus, a complaint must plead "enough facts

United States District Court
Northern District of California

1    to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

2    570 (2007).  Plausibility does not mean probability, but it requires "more than a sheer possibility

3    that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009).  A complaint

4    must therefore provide a defendant with "fair notice" of the claims against it and the grounds for

5    relief.  *Twombly*, 550 U.S. at 555 (quotations and citation omitted).

6           In considering a motion to dismiss, the court accepts factual allegations in the complaint as

7    true and construes the pleadings in the light most favorable to the nonmoving party.  *Manzarek v.*

8    *St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *Erickson v. Pardus*, 551

9    U.S. 89, 93–94 (2007).  However, "the tenet that a court must accept a complaint's allegations as

10   true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere

11   conclusory statements." *Iqbal*, 556 U.S. at 678.

12          If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no

13   request to amend the pleading was made, unless it determines that the pleading could not possibly

14   be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en

15   banc) (citations and quotations omitted).  A court "may exercise its discretion to deny leave to

16   amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to

17   cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . .,

18   [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th

19   Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

20                                **IV.    DISCUSSION**

21   **A.    Count One: Cal. Civ. Code § 51**

22          The Unruh Civil Rights Act provides: "All persons within the jurisdiction of this state are

23   free and equal, and no matter what their sex, race, color, religion, ancestry, national origin,

24   disability, medical condition, genetic information, marital status, or sexual orientation are entitled

25   to the full and equal accommodations, advantages, facilities, privileges, or services in all business

26   establishments of every kind whatsoever." Cal. Civ. Code § 51(b).  The Act prohibits

27   "unreasonable, arbitrary, or invidious discrimination." *Dallas and Lashmi, Inc. v. 7-Eleven, Inc.*,

28   112 F. Supp. 3d 1048, 1062 (C.D. Cal. 2015) (citing *Sunrise Country Club Ass'n v. Proud*, 190

United States District Court
Northern District of California

Cal. App. 3d 377, 380 (1987)). "Unreasonable, arbitrary, or invidious discrimination is present where the defendant's policy or action 'emphasizes irrelevant differences' or 'perpetuates [irrational] stereotypes.'" *Id.* (citing *Kiore v. Metro Car Wash*, 40 Cal. 3d 24, 33 (1985)). Proof of intentional discrimination is necessary to establish an Unruh Act violation. *Munson v. Del Taco, Inc.*, 46 Cal. 4th 661, 664 (2009).

In his amended complaint, Floyd alleges he is a member of a protected class (African-American) and

> was not provided with the full and equal accommodations of Planet Fitness gyms in the Bay Area, despite paying for the gym's services. The Director of Operations Brandon Romero instructed gym staff to closely watch Plaintiff. During the Plaintiff's Oakland membership, the Plaintiff could sense negativity from some staff members. Since the "watch closely" request, the Plaintiff was called a bum, flagged for touching an employee on the shoulder, alleged to harass other members without notification nor investigation, denied the privilege of purchasing a lock, and forced to stop conversing with another gym member. The Plaintiff was finally ordered to leave the gym after talking to a woman. On that occasion, the Plaintiff did nothing to warrant his removal from the gym. Indeed, the Unruh Civil Rights Act will serve to banish the arbitrary and invidious discrimination the Plaintiff has endured.

Sec. Am. Compl. at 10-11.

Saber argues none of these allegations articulate acts of discrimination, as "the 'mere possibility' that Saber engaged in conduct to violate the Unruh Act is insufficient to meet the pleading requirements." Mot. at 6. However, accepting Floyd's allegations as true and construing the pleadings in the light most favorable to him, the Court finds his Unruh Act claim sufficient at this stage. Floyd alleges he is an African-American man that experienced intentional discrimination. His amended complaint provides a concrete underlying factual basis for his claims, including that the Director of Operations instructed gym staff to closely watch him, that he was called a bum, flagged for touching an employee, and accused of harassing other members without providing him any notification or conducting an investigation. As such, Floyd's allegations provide a sufficient factual basis for his allegations to be plausible. *See James v. U.S. Bancorp*, 816 F. App'x 181, 182 (9th Cir. 2020) (reversing dismissal of Unruh Act claim where plaintiffs alleged bank treated them differently than white people); *Starr v. Baca*, 652 F.3d 1202,

1   1216-17 (9th Cir. 2011) ("If there are two alternative explanations, one advanced by defendant and

2   the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a

3   motion to dismiss under Rule 12(b)(6).")

4          Accordingly, the Court **DENIES** Saber's motion to dismiss.

5   **B.      Count Two: Cal. Bus. & Prof. Code § 17200**

6          Under the UCL, any person or entity that has engaged, is engaging, or threatens to engage

7   "in unfair competition may be enjoined in any court of competent jurisdiction." Cal. Bus. & Prof.

8   Code § 17203. The UCL's "purpose is to protect both consumers and competitors by promoting

9   fair competition in commercial markets for goods and services." *Kwikset Corp. v. Superior Ct.*,

10  51 Cal. 4th 310, 320 (2011). "Unfair competition" includes "any unlawful, unfair or fraudulent

11  business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof.

12  Code § 17200. Each prong of the UCL is a separate and distinct theory of liability. *Kearns v.*

13  *Ford Motor Co*., 567 F.3d 1120, 1127 (9th Cir. 2009). The UCL's coverage is "sweeping,

14  embracing anything that can properly be called a business practice and that at the same time is

15  forbidden by law." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180

16  (1999) (internal quotations and citation omitted).

17         Floyd alleges he:

18              was oppressed by the Defendant's staff, being targeted, called a
                "bum", not allowed to purchase items, interrupted in conversation,
19              and denied proper investigation of harassment allegations. This
                conduct is immoral and unethical and led to injury mentioned below;
20              [and] Defendants [sic] have not provided any reasons nor
                justifications for the targeting practice that created the victims injuries
21              described below.

22  Sec. Am. Compl. at 13. He also alleges the "unfair" conduct Saber engaged in is the conduct

23  "mentioned under the Unruh cause of action." *Id*. He alleges "the violation of . . . [the] Unruh

24  Civil Rights Act violates California UCL. For the same reasons listed in the previous section 1,

25  the Defendant has violated this California law." *Id*. at 12.

26         "Under the UCL's unfairness prong, courts consider either: (1) whether the challenged

27  conduct is tethered to any underlying constitutional, statutory or regulatory provision, or that it

28  threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust

United States District Court
Northern District of California

law; (2) whether the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers; or (3) whether the practice's impact on the victim outweighs the reasons, justifications and motives of the alleged wrongdoer." *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1214–15 (9th Cir. 2020). "This standard is intentionally broad[.]" *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 886 (1999).

Saber argues Floyd fails to state a claim because he does not plead facts showing that the challenged conduct is tethered to any underlying constitutional, statutory or regulatory provision. Mot. at 7-8. However, Floyd alleges his UCL claim is based on his underlying Unruh Act claim and, as discussed above, Floyd has alleged a viable claim under that Act. *See C.L. v. Del Amo Hosp. Inc.*, 2019 WL 2879880, at *8 (C.D. Cal. June 3, 2019) (permitting UCL unfair prong claim to proceed where plaintiff alleged it was based on underlying Unruh Act claim, among others). "The test of whether a business practice is unfair involves an examination of that practice's impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer. In brief, the court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Candelore v. Tinder, Inc.*, 19 Cal. App. 5th 1138, 1155–56 (2018) (cleaned up). As Floyd alleges he is a member of a protected class that faced discrimination because of Saber's business practices, the Court finds he has stated a claim under the UCL. *See id.* at 1156 ("[T]he [Unruh] Act protects 'all persons' from status-based discriminatory business practices that operate to deprive innocent individuals of 'full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.' . . . Insofar as the complaint sufficiently alleges a violation of the Act and the public policy it embodies, a claim for violation of the UCL has also been stated.") (quoting Cal. Civ. Code § 51, citation omitted).

Accordingly, the Court **DENIES** Saber's motion to dismiss Floyd's UCL claim. However, to the extent Floyd seeks damages under the UCL, he is advised that a "UCL action is equitable in nature; damages cannot be recovered." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003). "[U]nder the UCL, '[p]revailing plaintiffs are generally limited to injunctive relief and restitution.'" *Id.* (citing *Cel-Tech Commc'ns, Inc.*, 20 Cal. 4th at 179); *see also Kwikset*,

United States District Court
Northern District of California

7

1    51 Cal. 4th at 337 ("Injunctions are 'the primary form of relief available under the UCL to protect

2    consumers from unfair business practices,' while restitution is a type of 'ancillary relief.'")

3    (citation omitted).[4]

4    **C.    Count Three: Negligent Training and Supervision**

5         Floyd's third claim is titled: "Restatement (Second) of Agency § 213 - Negligent Training

6    and Supervision; Restatement (Second) of Torts§ 317 - Negligent Supervision."  Sec. Am. Compl.

7    at 13-14.  The Court construes this as a claim for negligent training and supervision.  He alleges:

> The Director of Operations Brandon Romero ordered his staff to
> monitor the Plaintiff. The Plaintiff was then targeted by the
> employees: The Plaintiff was called a bum, flagged for touching an
> employee on the shoulder, alleged to harass other members without
> notification nor investigation, denied the privilege of purchasing a
> lock, and forced to stop conversing with another gym member. The
> employees violated the FEHA by not properly investigating
> harassment allegations made against the Plaintiff. As a result of the
> negligence, the Plaintiff suffered the injuries mentioned below.

*Id.* at 14.  Saber argues this claim must be dismissed because Floyd fails to identify which

employees were incompetent or unfit, and he does not allege it knew or should have known that

retaining a particular employee created a particular risk or hazard and that that harm materialized.

Mot. to Dismiss at 9.

         Under California law, "an employer may be liable to a third person for the employer's

negligence in hiring, supervising, or retaining an employee who is incompetent or unfit."  *Diaz v.

Tesla, Inc.*, 598 F. Supp. 3d 809, 832 (N.D. Cal. 2022) (quoting *Delfino v. Agilent Techs., Inc.*,

145 Cal. App. 4th 790, 815 (2006) (internal quotations and alterations omitted).  For the employer

to be liable, "the employer must have known or should have known that retaining the employee

'created a particular risk or hazard and that particular harm materializes.'"  *Id.*

         In its previous order, the Court dismissed this claim with leave to amend because, "[w]hile

Floyd alleges Romero ordered his staff to harass him, and that Saber remained Romero's employer

---

[4] Saber argues Floyd's claim for injunctive relief must be dismissed because he has been banned
from all Planet Fitness gyms in the Bay Area, and he is thus incapable of being redressed by any
injunction.  Motion. at 11-12.  However, Floyd's ban goes to the heart of his allegations, and the
Court declines to find at this stage in the pleadings that an injunction is unavailable.

United States District Court
Northern District of California

1    after the incidents occurred, he does not allege that Saber 'kn[ew] or should have known that

2    retaining [Romero] created a particular risk or hazard and that particular harm materialize[d].'"

3    *Floyd*, 2024 WL 2971669, at *13 (quoting *Diaz*, 598 F. Supp. 3d at 832).  The same is true of

4    Floyd's second amended complaint, as he once again fails to allege Saber knew or should have

5    known its employment decisions were negligent.  As such, dismissal is appropriate.  *See James*,

6    816 F. App'x at 182 ("The district court properly dismissed plaintiffs' claim for negligent

7    supervision or retention because plaintiffs failed to allege facts sufficient to show that defendants

8    knew or should have known that their hiring decisions were negligent").  Given Floyd's pro se

9    status, the Court shall grant him a final opportunity to amend this claim to plausibly allege facts

10   showing that Saber knew or should have known that its employment decisions were negligent.

11   **D.      Count Four: Cal. Gov't Code § 12940**

12            In his fourth cause of action under FEHA, Floyd alleges Saber

13               did not take reasonable steps to prevent harassment. The Defendant
                 did not conduct any reasonable investigation into the harassment
14               claims against the Plaintiff. Exhibit 6 shows a report from a
                 Defendant's staff member claiming "multiple instances where
15               [Plaintiff] made staff and members uncomfortable." Other items
                 reported include inappropriately staring at Defendant gym patrons.
16               When these incidents occurred, the Plaintiff was not notified. No
                 investigation was conducted. The Plaintiff didn't know of these
17               incidents until he took a picture of the screen months later.

18               The alleged perpetrator needs to be protected within the FEHA just
                 like the alleged victim. There are six reports in Exhibit 6 from various
19               Defendant employees. Much of the conduct in these reports do not
                 seem like harassment and are trivial, but aggregately observing the
20               claims make the alleged perpetrator seem problematic. Again, the
                 Plaintiff was never questioned about these reported events. Defendant
21               is responsible for investigating these reports. The Plaintiff's
                 membership to Defendant's gym was terminated without proper
22               investigation of harassment claims.

23   Sec. Am. Compl. at 16.  Saber argues this claim fails because Floyd does not allege he is an

24   employee.  Mot. at 10-11.  The Court agrees.[5]

25            Floyd alleges he is a former member of Saber's Planet Fitness gym, but he does not

26

27   _____

28   [5] Saber also argues this claim fails because Floyd does not allege he exhausted his administrative
     remedies, but this does not appear to be at issue because Floyd attached his right to sue letter with
     his opposition.  ECF No. 47-2.

contend he had an employment relationship with Saber.  FEHA prohibits employment

discrimination based on certain enumerated classifications, one being race.  *See* Cal. Gov't Code §

12920 ("It is hereby declared as the public policy of this state that it is necessary to protect and

safeguard the right and opportunity of all persons to seek, obtain, and hold employment without

discrimination or abridgment on account of race . . . .").  Thus, it "'prohibits *employment*

discrimination,' not discrimination or retaliation in other relationships."  *Fitzsimons v. Cal.*

*Emergency Physicians Med. Grp.*, 205 Cal. App. 4th 1423, 1427 (2012) (emphasis in original)

(quoting *Shephard v. Loyola Marymount Univ.*, 102 Cal. App. 4th 837, 842 (2002)).  "'If there is

no proscribed employment practice,' the FEHA does not apply."  *Id.* (quoting *Vernon v. State of*

*California*, 116 Cal. App. 4th 114, 123 (2004)).

As there appears to be no employer/employee relationship between Floyd and Saber, this

claim likely fails.  Accordingly, the Court **GRANTS** Saber's motion to dismiss Floyd's FEHA

claim.  Although it is not clear that Floyd can properly plead a claim, dismissal is with leave to

amend, but only if he can plausibly allege Saber discriminated against him in the ability to seek,

obtain, or hold employment based on a protected status.

**E.     Motion for More Definitive Statement**

Saber also argues that, to the extent the Court is inclined to allow Floyd leave to amend his

pleadings, he should be required to provide a more definitive statement that complies with Federal

Rule of Civil Procedure 10.  That rule provides:

> A party must state its claims or defenses in numbered paragraphs,
> each limited as far as practicable to a single set of circumstances. A
> later pleading may refer by number to a paragraph in an earlier
> pleading. If doing so would promote clarity, each claim founded on a
> separate transaction or occurrence--and each defense other than a
> denial--must be stated in a separate count or defense.

Fed. R. Civ. P. 10(b).

In its previous order, the Court informed Floyd that his "factual allegations and claims

must be written in numbered paragraphs, each limited as far as practicable to a single set of

circumstances."  ECF No. 39 at *29.  If Floyd chooses to file an amended complaint, the Court

advises him that failure to comply with the Federal and Civil Local Rules may result in the Court

1  striking his amended complaint.

2                          **V.   CONCLUSION**

3        For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART**

4  Saber's motion to dismiss.  If he chooses to do so, Floyd may file a third amended complaint by

5  September 20, 2024.

6  **A.      Requirements for Amended Complaint**

7        Because an amended complaint replaces the previous complaint, it may not incorporate

8  claims or allegations in the original complaint by reference.  *See Ferdik v. Bonzelet*, 963 F.2d

9  1258, 1262 (9th Cir. 1992).  Instead, any amendment must include all of the facts and claims to be

10  presented and all of the defendants that are to be sued.  In addition, any amended complaint must

11  include the following sections:

12        **Caption Page**
          On the first page, list the names of the defendant(s), the case number
13        used in this order (24-cv-01278-TSH), the title ("THIRD AMENDED
          COMPLAINT"), and write "Demand for Jury Trial" if you want your
14        case to be heard by a jury.

15        **Form of Pleadings**
          The factual allegations and claims must be written in numbered
16        paragraphs, each limited as far as practicable to a single set of
          circumstances.
17

18        **Subject Matter Jurisdiction**
          The  first  numbered  paragraph  in  your  complaint  (labeled
19        "Jurisdiction") should explain why this Court has the power to decide
          this kind of case.  A federal court can hear a case based on a federal
20        question jurisdiction (a violation of federal law under 28 U.S.C. §
          1331) or diversity jurisdiction (when all plaintiffs and all defendants
21        are citizens of different states disputing more than $75,000) under 28
          U.S.C. § 1332.
22
          **Parties**
23        In separate paragraphs for each party, identify the plaintiff(s) and
          defendant(s) in the case.
24
          **Statement of Facts**
25        Explain the important facts in your case in numbered paragraphs,
          describing how the defendant(s) violated the law and how you have
26        been injured.

27        **Claims**
          Include a separate heading for each legal claim (Claim 1, Claim 2,
28        etc.), identifying the specific law that you think the defendant(s)
          violated and explaining in numbered paragraphs what each defendant

did to violate each law.

**B.      Resources**

Floyd is reminded that he may wish to seek assistance from the Legal Help Center, a free service offered by the Justice & Diversity Center of the Bar Association of San Francisco.  You may request an appointment by emailing fedpro@sfbar.org or calling 415-782-8982.  At the Legal Help Center, you will be able to speak with an attorney who may be able to provide basic legal help but not representation.  More information is available at https://www.cand.uscourts.gov/pro-se-litigants/.

Floyd may also wish to obtain a copy of this District's *Handbook for Litigants Without a Lawyer*, which provides instructions on how to proceed at every stage of your case.  The handbook is available in person at the Clerk's Office and online at: https://www.cand.uscourts.gov/pro-se-litigants/.

**IT IS SO ORDERED.**

Dated: August 23, 2024

THOMAS S. HIXSON
United States Magistrate Judge