1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL DEVIN FLOYD, | Case No. 24-cv-01278-TSH |
| Plaintiff, | |
| v. | **ORDER DENYING MOTION TO DISMISS THIRD AMENDED COMPLAINT** |
| SABER FITNESS HEGENBERGER, LLC, | |
| Defendant. | Re: Dkt. No. 53 |

## I.  INTRODUCTION

Pending before the Court is Defendant Saber Fitness Hegenberger, LLC's Motion to Dismiss Plaintiff Michael Floyd's Third Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]  ECF No. 53.  Floyd filed an opposition (ECF No. 54) and Saber filed a reply (ECF No. 55).  The Court finds this matter suitable for disposition without oral argument and **VACATES** the November 7, 2024 hearing.  *See* Civ. L.R. 7-1(b).  For the reasons stated below, the Court **DENIES** Saber's motion.[2]

---

[1] As part of its motion, Saber also requests the Court strike claims Floyd asserts for the first time in his Third Amended Complaint.  Mot. at 3-5.  As it did not previously instruct Floyd that he could not assert new claims, the Court **DENIES** Saber's motion to strike.  *See Topadzhikyan v. Glendale Police Dept.*, 2010 WL 2740163, at *3 n.1 (C.D. Cal. July 8, 2010) (declining to strike new claims where court granted leave to amend without limitation); *Gilmore v. Union Pacific R. Co.*, 2010 WL 2089346, at *4 (E.D. Cal. May 21, 2010) (finding plaintiff was not required to seek leave to add new claims where court granted leave to amend without limitation); *DeLeon v. Wells Fargo Bank, N.A.*, 2010 WL 4285006, at *3 (N.D. Cal. Oct. 22, 2010) (recognizing that California district courts have considered new claims submitted in an amended complaint where the prior order of dismissal granted leave to amend without limitation).

[2] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF Nos. 16, 29, 36.

## II.   BACKGROUND

**A.   Factual Background**

Floyd, who is African-American, opened an all-access gym membership at Saber's Planet Fitness in Jacksonville, Florida in 2019.  Third Am. Compl. ("TAC") ¶¶ 9, 22, ECF No. 52. While visiting family in San Jose in July 2021, he went to a Planet Fitness location there and was subsequently told by his home gym in Florida that there was a complaint about his "vulgarity and personality."  *Id.* ¶ 9.  Staff at the San Jose Planet Fitness said Floyd was no longer allowed there, but they did not provide any further details.  *Id.*  Floyd began using other Planet Fitness gyms in the nearby area, but "other incidents occurred" at these gyms, and his home gym in Florida subsequently informed him that his membership was cancelled.  *Id.* ¶ 10.

On September 17, 2021, Floyd opened another Planet Fitness membership in Oakland, California.  *Id.* ¶ 12.  Floyd alleges several incidents took place at the Oakland Planet Fitness, including a report on October 13 that he was "slamming weights down," that on October 16 the Director of Operations asked gym staff to watch him carefully, that on November 10 he heard a staff member say to him "Have a good day, bum," although the staff member denied calling him a bum, and that there were "multiple incidents" in December 2021 where other gym patrons and staff members reported they felt uncomfortable.  *Id.* ¶¶ 14-17.

Floyd alleges the "last incident," which is undated, occurred at the Planet Fitness on Ranch Drive in Milpitas.[3]  *Id.* ¶ 19.  Floyd alleges he "met a girl at the water fountain.  We both took an interest in each other.  At no time did she tell me she wanted to stop talking to me, nor expressed she was uninterested in me."  *Id.*  Floyd alleges "[s]he forgot her lock at home and when she was about to buy a lock, I attempted to pay for it, when Majenta then told me I was making the woman feel uncomfortable," even though the member "never expressed to me she was feeling uncomfortable.  The Planet Fitness member also did not express to Majenta she was feeling uncomfortable nor made any movements to indicate she was uncomfortable."  *Id.*  When Floyd

---

[3] As in its previous motion, Saber argues any incidents related to the Planet Fitness on Ranch Drive in Milpitas are not relevant to this case because it does not own that Planet Fitness.  Mot. at 2 n. 2.  For purposes of this motion, the Court shall consider these incidents as they relate to any alleged actions Saber may have taken.

United States District Court
Northern District of California

told "Majenta to mind her business, the woman even backed me up, telling Majenta not to tell me anything and that she will talk to me when she wants.  Unfortunately, Majenta and other staff members asked me to leave before I could purchase the lock for the woman."  *Id.*  After this incident, Floyd was banned from all Planet Fitness locations in the Bay Area.  *Id.* ¶ 20.

**B.      Procedural Background**

On July 3, 2023, Floyd filed his initial complaint in the Alameda Superior Court, Case No. 23CV037550, naming "Planet Fitness of Oakland, CA," as the defendant.  ECF No. 1-1; Ex. A. On January 30, 2024, Floyd filed a First Amended Complaint naming Saber.  Not. of Removal, Ex. B, ECF No. 1-2.  He alleged ten causes of action: (1) 42 U.S.C. § 1981; (2) 42 U.S.C. § 2000a; (3) California's Unruh Civil Rights Act, Cal. Civ. Code § 51; (4) Cal. Civ. Code § 51.5; (5) California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200; (6) California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750; (7) Negligent Training and Supervision; (8) "Restatement (Third) of Law, Agency Law, Agency § 7.04, § 7.06, § 7.07, § 7.08 – Principal's Liability to a Third Party"; (9) Negligent Infliction of Emotional Distress; and (10) Cal. Civ. Code § 1714.

Saber removed the matter to this Court on March 1, 2024 and subsequently moved for dismissal pursuant to Rule 12(b)(6).  ECF No. 6.  On June 11, 2024, the Court granted Saber's motion with leave to amend.  ECF No. 39; *Floyd v. Saber Fitness Hegenberger, LLC*, 2024 WL 2971669, at *1 (N.D. Cal. June 11, 2024).

On July 11, 2024, Floyd filed a Second Amended Complaint on July 11, 2024, re-alleging three claims from his previous complaint (violation of the Unruh Act, violation of the UCL, and Negligent Training and Supervision) and adding a new claim under California's Fair Employment and Housing Act, Cal. Gov't Code § 12940.  ECF No. 40.  Saber again moved for dismissal.  ECF No. 44.  On August 23, 2024, the Court granted Saber's motion in part and denied it in part, again with leave to amend.  ECF No. 51; *Floyd v. Saber Fitness Hegenberger, LLC*, 2024 WL 3924688, at *1 (N.D. Cal. Aug. 23, 2024).

On September 18, 2024, Floyd filed the operative TAC, alleging the following claims: (1) California's Unruh Civil Rights Act, Cal. Civ. Code § 51; (2) California's UCL; (3) Negligent

1    Training and Supervision; (4) Breach of Contract; (5) Breach of Implied Covenant of Good Faith

2    and Fair Dealing; and (6) Breach of Implied Duty to Perform with Reasonable Care.

3         Saber filed the present motion on October 2, 2024.

4                        **III.   LEGAL STANDARD**

5         A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal

6    sufficiency of a claim.  A claim may be dismissed only if it appears beyond doubt that the plaintiff

7    can prove no set of facts in support of his claim which would entitle him to relief."  *Cook v.*

8    *Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (citation and quotation marks omitted).  Rule 8

9    provides that a complaint must contain a "short and plain statement of the claim showing that the

10   pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Thus, a complaint must plead "enough facts

11   to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

12   570 (2007).  Plausibility does not mean probability, but it requires "more than a sheer possibility

13   that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009).  A complaint

14   must therefore provide a defendant with "fair notice" of the claims against it and the grounds for

15   relief.  *Twombly*, 550 U.S. at 555 (quotations and citation omitted).

16        In considering a motion to dismiss, the court accepts factual allegations in the complaint as

17   true and construes the pleadings in the light most favorable to the nonmoving party.  *Manzarek v.*

18   *St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *Erickson v. Pardus*, 551

19   U.S. 89, 93–94 (2007).  However, "the tenet that a court must accept a complaint's allegations as

20   true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere

21   conclusory statements."  *Iqbal*, 556 U.S. at 678.

22        If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no

23   request to amend the pleading was made, unless it determines that the pleading could not possibly

24   be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en

25   banc) (citations and quotations omitted).  A court "may exercise its discretion to deny leave to

26   amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to

27   cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . .,

28   [and] futility of amendment.'"  *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th

United States District Court
Northern District of California

4

1  Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

2                                   **IV.   DISCUSSION**

3  **A.      Count One: Cal. Civ. Code § 51**

4          The Unruh Civil Rights Act provides: "All persons within the jurisdiction of this state are

5  free and equal, and no matter what their sex, race, color, religion, ancestry, national origin,

6  disability, medical condition, genetic information, marital status, or sexual orientation are entitled

7  to the full and equal accommodations, advantages, facilities, privileges, or services in all business

8  establishments of every kind whatsoever." Cal. Civ. Code § 51(b). The Act prohibits

9  "unreasonable, arbitrary, or invidious discrimination." *Dallas and Lashmi, Inc. v. 7-Eleven, Inc.*,

10  112 F. Supp. 3d 1048, 1062 (C.D. Cal. 2015) (citing *Sunrise Country Club Ass'n v. Proud*, 190

11  Cal. App. 3d 377, 380 (1987)). "Unreasonable, arbitrary, or invidious discrimination is present

12  where the defendant's policy or action 'emphasizes irrelevant differences' or 'perpetuates

13  [irrational] stereotypes.'" *Id.* (citing *Kiore v. Metro Car Wash*, 40 Cal. 3d 24, 33 (1985)). Proof

14  of intentional discrimination is necessary to establish an Unruh Act violation. *Munson v. Del*

15  *Taco, Inc.*, 46 Cal. 4th 661, 664 (2009).

16          In his amended complaint, Floyd alleges he is a member of a protected class (African-

17  American) and

18              was not provided with the full and equal accommodations of Planet
                Fitness gyms in the Bay Area, despite paying for the gym's services.
19              The Director of Operations Brandon Romero instructed gym staff to
                closely watch Plaintiff. During the Plaintiff's Oakland membership,
20              the Plaintiff could sense negativity from some staff members. Since
                the "watch closely" request, the Plaintiff was called a bum, flagged
21              for touching an employee on the shoulder, alleged to harass other
                members without notification nor investigation, denied the privilege
22              of purchasing a lock, and forced to stop conversing with another gym
                member. The Plaintiff was finally ordered to leave the gym after
23              talking to a woman. On that occasion, the Plaintiff did nothing to
                warrant his removal from the gym. Indeed, the Unruh Civil Rights
24              Act will serve to banish the arbitrary and invidious discrimination the
                Plaintiff has endured.
25

26  TAC ¶¶ 21-22. Unlike his previous complaints, Floyd also alleges "some of the acts within this

27  Complaint could be viewed as discriminatory based on sexual orientation." *Id.* ¶ 23.

28          Saber first argues Floyd's Unruh Act claim fails because the Court previously found his

United States District Court
Northern District of California

1    allegations fell short of the pleading requirements and granted Saber's motion to dismiss this

2    claim.  Mot. at 7-8.  However, this argument does not address the Court's subsequent order

3    addressing Floyd's Second Amended Complaint, in which the Court found his Unruh Act claim

4    sufficient at the pleading stage, and therefore denied Saber's motion as to this claim.  ECF No. 51

5    at 5-6.  As Floyd brings the same allegations in his TAC, the Court again finds his Unruh Act

6    claim sufficient at this stage.

7         As to Floyd's new allegation based on sexual orientation, Saber does not argue that this is

8    not a protected class under the Unruh Act, as it clearly is.  Instead, Saber argues its "enforcement

9    of its policies does not amount to discrimination based on Plaintiff's sexual orientation, regardless

10   of Plaintiff's improper understanding of what behavior is 'normal' in the gym, like leering at

11   female members and touching staff without their consent."  Mot. at 8-9.  However, Floyd's TAC

12   provides a concrete underlying factual basis for his claims, including that the Director of

13   Operations instructed gym staff to closely watch him, that he was called a bum, flagged for

14   touching an employee, and accused of harassing other members without providing him any

15   notification or conducting an investigation.  As such, Floyd's allegations provide a sufficient

16   factual basis for his allegations to be plausible.  *See James v. U.S. Bancorp*, 816 F. App'x 181, 182

17   (9th Cir. 2020) (reversing dismissal of Unruh Act claim where plaintiffs alleged bank treated them

18   differently than white people); *Starr v. Baca*, 652 F.3d 1202, 1216-17 (9th Cir. 2011) ("If there are

19   two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both

20   of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6).")

21        Accordingly, the Court **DENIES** Saber's motion to dismiss Floyd's Unruh Act claim.

22   **B.      Count Two: Cal. Bus. & Prof. Code § 17200**

23        Under the UCL, any person or entity that has engaged, is engaging, or threatens to engage

24   "in unfair competition may be enjoined in any court of competent jurisdiction."  Cal. Bus. & Prof.

25   Code § 17203.  The UCL's "purpose is to protect both consumers and competitors by promoting

26   fair competition in commercial markets for goods and services."  *Kwikset Corp. v. Superior Ct.*,

27   51 Cal. 4th 310, 320 (2011).  "Unfair competition" includes "any unlawful, unfair or fraudulent

28   business act or practice and unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof.

United States District Court
Northern District of California

6

1    Code § 17200.  Each prong of the UCL is a separate and distinct theory of liability.  *Kearns v.*

2    *Ford Motor Co*., 567 F.3d 1120, 1127 (9th Cir. 2009).  The UCL's coverage is "sweeping,

3    embracing anything that can properly be called a business practice and that at the same time is

4    forbidden by law."  *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180

5    (1999) (internal quotations and citation omitted).

6        Floyd alleges he:

7            was oppressed by the Defendant's staff, being targeted, called a
             "bum", not allowed to purchase items, interrupted in conversation,
8            and denied proper investigation of harassment allegations. This
             conduct is immoral and unethical and led to injury mentioned below;
9            [and] Defendants [sic] have not provided any reasons nor
             justifications for the targeting practice that created the victims injuries
10           described below.

11   TAC ¶ 25.  He also alleges the "unfair" conduct Saber engaged in is the conduct "mentioned under

12   the Unruh cause of action."  *Id*. ¶ 25.  He alleges "the violation of . . . [the] Unruh Civil Rights Act

13   violates California UCL.  For the same reasons listed in the previous section 1, the Defendant has

14   violated this California law."  *Id*. ¶ 24.

15       "Under the UCL's unfairness prong, courts consider either: (1) whether the challenged

16   conduct is tethered to any underlying constitutional, statutory or regulatory provision, or that it

17   threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust

18   law; (2) whether the practice is immoral, unethical, oppressive, unscrupulous or substantially

19   injurious to consumers; or (3) whether the practice's impact on the victim outweighs the reasons,

20   justifications and motives of the alleged wrongdoer."  *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204,

21   1214–15 (9th Cir. 2020).  "This standard is intentionally broad[.]"  *S. Bay Chevrolet v. Gen.*

22   *Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 886 (1999).

23       Saber argues Floyd fails to state a claim because he does not plead facts showing that the

24   challenged conduct is tethered to any underlying constitutional, statutory or regulatory provision.

25   Mot. at 9-10.  However, Floyd alleges his UCL claim is based on his underlying Unruh Act claim

26   and, as discussed above, he alleges a viable claim under that Act.  *See C.L. v. Del Amo Hosp. Inc.*,

27   2019 WL 2879880, at *8 (C.D. Cal. June 3, 2019) (permitting UCL unfair prong claim to proceed

28   where plaintiff alleged it was based on underlying Unruh Act claim, among others).

United States District Court
Northern District of California

1    Saber next argues Floyd's allegations "are unsupported conclusory allegations that cannot

2    support a UCL claim."  Mot. at 10.  However, "[t]he test of whether a business practice is unfair

3    involves an examination of that practice's impact on its alleged victim, balanced against the

4    reasons, justifications and motives of the alleged wrongdoer.  In brief, the court must weigh the

5    utility of the defendant's conduct against the gravity of the harm to the alleged victim."

6    *Candelore v. Tinder, Inc.*, 19 Cal. App. 5th 1138, 1155–56 (2018) (cleaned up).  As Floyd alleges

7    he is a member of a protected class that faced discrimination because of Saber's business

8    practices, the Court finds he has stated a claim under the UCL.  *See id.* at 1156 ("[T]he [Unruh]

9    Act protects 'all persons' from status-based discriminatory business practices that operate to

10   deprive innocent individuals of 'full and equal accommodations, advantages, facilities, privileges,

11   or services in all business establishments of every kind whatsoever.' . . .  Insofar as the complaint

12   sufficiently alleges a violation of the Act and the public policy it embodies, a claim for violation

13   of the UCL has also been stated.") (quoting Cal. Civ. Code § 51, citation omitted).  Accordingly,

14   the Court **DENIES** Saber's motion to dismiss Floyd's UCL claim.  However, to the extent Floyd

15   seeks damages under the UCL, he is advised that a "UCL action is equitable in nature; damages

16   cannot be recovered."  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144

17   (2003).  "[U]nder the UCL, '[p]revailing plaintiffs are generally limited to injunctive relief and

18   restitution.'"  *Id.* (citing *Cel-Tech Commc'ns, Inc.*, 20 Cal. 4th at 179); *see also Kwikset*, 51 Cal.

19   4th at 337 ("Injunctions are 'the primary form of relief available under the UCL to protect

20   consumers from unfair business practices,' while restitution is a type of 'ancillary relief.'")

21   (citation omitted).[4]

22   **C.    Count Three: Negligent Training and Supervision**

23   Floyd's third claim is titled: "Restatement (Second) of Agency § 213 - Negligent Training

24   and Supervision; Restatement (Second) of Torts§ 317 - Negligent Supervision (CACI No 426)."

25   TAC at 14.  The Court construes this as a claim for negligent training and supervision.  He alleges:

26   

---

27   [4] Saber argues Floyd's claim for injunctive relief must be dismissed because he has been banned
from all Planet Fitness gyms in the Bay Area, and he is thus incapable of being redressed by any
28   injunction.  Motion. at 14-15.  However, Floyd's ban goes to the heart of his allegations, and the
Court declines to find at this stage in the pleadings that an injunction is unavailable.

> The Director of Operations Brandon Romero ordered his staff to monitor the Plaintiff. The Plaintiff was then targeted by the employees: The Plaintiff was called a bum, flagged for touching an employee on the shoulder, alleged to harass other members without notification nor investigation, denied the privilege of purchasing a lock, and forced to stop conversing with another gym member. The employees violated the FEHA by not properly investigating harassment allegations made against the Plaintiff. As a result of the negligence, the Plaintiff suffered the injuries mentioned below.

*Id.* ¶ 26.  Floyd alleges Saber "is responsible for that harm because Romero negligently supervised Fernandez, Misa, Brightstar, and Maldonado." *Id.* ¶ 27.  He alleges Saber "knew this happened, yet failed to uphold the contract." *Id.*  Saber argues this claim must be dismissed because it rests on conclusory allegations.  Mot. at 11.

Under California law, "an employer may be liable to a third person for the employer's negligence in hiring, supervising, or retaining an employee who is incompetent or unfit." *Diaz v. Tesla, Inc.*, 598 F. Supp. 3d 809, 832 (N.D. Cal. 2022) (quoting *Delfino v. Agilent Techs., Inc.*, 145 Cal. App. 4th 790, 815 (2006) (internal quotations and alterations omitted).  For the employer to be liable, "the employer must have known or should have known that retaining the employee 'created a particular risk or hazard and that particular harm materializes.'" *Id.*

In its previous two orders, the Court dismissed this claim with leave to amend because, "[w]hile Floyd alleges Romero ordered his staff to harass him, and that Saber remained Romero's employer after the incidents occurred, he does not allege that Saber 'kn[ew] or should have known that retaining [Romero] created a particular risk or hazard and that particular harm materialize[d].'" ECF No. 39 at 22; No. ECF No. 51 at 8-9 (quoting *Diaz*, 598 F. Supp. 3d at 832).  In his TAC, however, Floyd has added such allegations: Saber hired Romero, it knew that Romero harassed Floyd and falsely accused him of harassment, yet it failed to act.  Given these allegations, the Court finds Floyd has adequately stated a claim for negligent training and supervision.  *Diaz*, 598 F. Supp. 3d at 832.  Accordingly, the Court **DENIES** Saber's motion to dismiss this claim.

## D.    Count Four: Breach of Contract

In his fourth cause of action for breach of contract, Floyd alleges he and Saber entered into a contract.  Plaintiff did all, or substantially all, of the

> significant things that the contract required him to do. Plaintiff did not violate any rules within the contract and thus the Defendant was required to uphold the contract. Defendant Saber Fitness failed to uphold the contract and terminated the Plaintiff's membership to their gym. Plaintiff was harmed; he was forced to purchase another more expensive gym membership (more injury details in Section VI Injuries). Defendant Saber Fitness's breach of contract was a substantial factor in causing Plaintiff's injuries noted below in **Section VI Injuries**.

TAC ¶ 28.  Saber argues this claim must be dismissed because Floyd fails to allege any factual allegations in support of his claim.  Mot. at 12.  Saber also argues dismissal is appropriate because Floyd's "conclusion that he 'did not violate any rules within the contract,' . . . contradicts his own allegations.  Plaintiff admits to violations stemming from slamming weights, unsolicited touching of female staff, and leering at female gym members as they exercised."  *Id.* (quoting TAC ¶¶ 14–20, 28).

To state a claim for breach of contract, a plaintiff must allege that "(1) a contract existed, (2) the plaintiff performed his duties or was excused from performing his duties under the contract, (3) the defendant breached the contract, and (4) the plaintiff suffered damages as a result of that breach."  *Chou v. Charles Schwab & Co.*, 2022 WL 1127384, at *3 (N.D. Cal. Mar. 22, 2022), *aff'd*, 2023 WL 2674367 (9th Cir. Mar. 29, 2023) (quoting *First Com. Mortg. Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001)).  The Court finds Floyd adequately pleads such a claim: a contract existed between him and Saber, he alleges he performed all duties under the contract, and Saber breached their contract by failing to stop harassing behavior and banning him from their gyms, thereby causing him damages.  While Saber invites the Court to determine it was actually Floyd that breached the contract through his behavior, the Court declines to make such a finding at this stage.  Accordingly, the Court **DENIES** Saber's motion to dismiss Floyd's breach of contract claim.

**E.     Count Five: Breach of the Implied Covenant of Good Faith and Fair Dealing**

In his fifth cause of action for breach of the implied covenant of good faith and fair dealing, Floyd alleges Saber

> violated the duty to act fairly and in good faith. To establish this claim, Plaintiff must prove: Plaintiff and Defendant Saber Fitness entered into a contract. Plaintiff did all, or substantially all, of the significant

United States District Court
Northern District of California

> things that the contract required him to do. Plaintiff did not violate
> any rules within the contract and thus the Defendant was required to
> uphold the contract. Defendant's Director of Operations Romero
> instructed Defendant's employees to watch the Plaintiff carefully.
> The Plaintiff was then discriminated against based on his sexual
> orientation. The Defendant Saber Fitness then canceled the Plaintiff's
> membership shortly after. Defendant Saber Fitness failed to uphold
> the contract and terminated the Plaintiff's membership to their gym,
> thereby preventing the Plaintiff from receiving the benefits under the
> contract. By doing so, Defendant Saber Fitness did not act fairly and
> in good faith. Plaintiff was harmed by Defendant Saber Fitness's
> conduct. See injury details in **Section VI Injuries**.

TAC ¶ 30. Saber argues "[n]ot only does this claim rise and fall with Plaintiff's breach of contract claim, but Plaintiff has failed to set forth anything beyond vague factual conclusions in support of this claim." Mot. at 13.

To state a claim, a plaintiff must allege: "(1) the plaintiff and the defendant entered into a contract; (2) the plaintiff did all or substantially all of the things that the contract required him to do or that he was excused from having to do; (3) all conditions required for the defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's right to receive the benefits of the contract; and (5) the defendant's conduct harmed the plaintiff." *Chou*, 2022 WL 1127384, at *6 (citing *Oculus Innovative Scis., Inc. v. Nofil Corp.*, 2007 WL 2600746, at *4 (N.D. Cal. Sept. 10, 2007)). "[A] breach of the covenant of good faith and fair dealing is prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act." *A.L. v. Pleasanton Unified Sch. Dist.*, 2023 WL 5209718, at *3 (N.D. Cal. Aug. 14, 2023) (internal quotations and citation omitted).

As with his breach of contract claim, the Court finds Floyd adequately pleads such a claim: a contract existed between him and Saber, he alleges he performed all duties under the contract, all conditions required for Saber's performance occurred, but Saber breached their contract by failing to stop harassing behavior and banning him from their gyms, thereby interfering with his right to receive benefits under their agreement and causing him damages. As alleged, the Court finds Saber's acts "unfairly frustrate[ ] the agreed common purposes [of the contract] and disappoint[ ] the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990). "Just what conduct will meet this criteria must be determined on a case by case basis and will

depend on the contractual purposes and reasonably justified expectations of the parties."  *Id.*

Further, "[w]hether the implied covenant of good faith has been breached is typically a question of

fact, unless only one inference can be drawn from the evidence."  *A.L.*, 2023 WL 5209718, at *3

(citing *Hicks v. E.T. Legg & Assocs.*, 89 Cal. App. 4th 496, 509 (2001)).  The Court declines to

hold as a matter of law that Floyd was not harmed by Saber's actions.  That is ultimately a

question of fact to be determined in later proceedings.  Accordingly, the Court **DENIES** Saber's

motion to dismiss Floyd's claim for breach of the implied covenant of good faith and fair dealing.

**F.     Count Six: Breach of the Implied Duty to Perform with Reasonable Care**

In his sixth cause of action for breach of the implied duty to perform with reasonable care,

Floyd alleges the parties' contract required Saber to "allow all gym members to use the facilities

and engage in ordinary encounters with other gym patrons," to "not discriminate on the basis of

sexual orientation," to investigate "all allegations of harassment from another gym patron or staff

member."  TAC ¶ 31.  He further alleges Saber

> failed to use reasonable care in maintaining non-discriminatory
> practices, investigating allegations of harassment, and allowing
> proper member-member interactions. The Defendant did not notify
> the Plaintiff when issues occurred within the facility. The Plaintiff
> was flagged for harassment-type problems with other gym patrons on
> two different occasions. The Plaintiff was not notified of these
> allegations, or properly allowed to refute the claims. The Plaintiff's
> membership and contract with the Defendant were then terminated.
> Plaintiff was harmed by Defendant Saber Fitness's conduct. See
> injury details in **Section VI Injuries**.

*Id.*  Saber argues this claim must be dismissed because it "lacks both legal and factual support."

Mot. at 14.

Under California law, there is a "well-settled principle that express contractual terms give

rise to implied duties," including "a common-law duty to perform with care, skill, reasonable

expedience, and faithfulness the thing agreed to be done."  *Holguin v. Dish Network LLC*, 229 Cal.

App. 4th 1310, 1324 (2014) (internal quotations omitted).  "The rule which imposes this duty is of

universal application as to all persons who by contract undertake professional or other business

engagements requiring the exercise of care, skill and knowledge; the obligation is implied by law

and need not be stated in the agreement."  *Id.*  "Thus, this duty, being implied by law, is 'as much

a part of the contract as if expressly set forth.'"  *Letizia v. Facebook Inc.*, 267 F. Supp. 3d 1235, 1249 (N.D. Cal. 2017) (quoting 14A Cal. Jur. 3d Contracts § 248 (2017)).  Given that Floyd has properly alleged a breach of contract claim, the Court finds he may also allege a claim for breach of the implied duty to perform with reasonable care.  While Saber appears to argue there was no breach because Floyd "enjoyed the use and access of Saber's facilities until his continued pattern of violating Saber's policies led to Saber enforcing its right to terminate his membership because of those violations," Mot. at 14, the Court declines to make this determination at the pleading stage.  Accordingly, the Court **DENIES** Saber's motion to dismiss this claim.

## V.    CONCLUSION

For the reasons stated above, the Court **DENIES** Saber's motion to dismiss.  The Court shall conduct a Case Management Conference on December 12, 2024 at 10:00 a.m. by Zoom video conference.  The webinar link and instructions are located at https://cand.uscourts.gov/judges/hixson-thomas-s-tsh/.  By December 5, 2024, the parties shall file a Joint Case Management Statement containing the information in the Standing Order for All Judges in the Northern District of California, available at: http://cand.uscourts.gov/tshorders.  The Joint Case Management Statement form may be obtained at: http://cand.uscourts.gov/civilforms.

**IT IS SO ORDERED.**

Dated: October 30, 2024

THOMAS S. HIXSON
United States Magistrate Judge

United States District Court
Northern District of California

13